Beach & Eddy vs. Curle's adm'r.

---

BEACH & EDDY, DEFENDANTS IN ERROR, VS. CURLE'S ADM'R, PLAINTIFF IN ERROR.

1. Leave of the court, extending the time of replying to a set off, working no injury to the opposite party, and not affecting the merits of the controversy, although apparently supported by no good reason, is not such an error, as will induce a reversal of the judgment.

2. The defendant has six days to answer; he may, at any time within that period, file it; and if he files it within less time than is required, the plaintiff must, in two days, unless longer time is given, reply to his set-off.

3. All negotiable notes are promissory, when, therefore, the petition describes writings as promissory notes, and it turns out in proof that they are also negotiable, there is no variance.

4. If the description of a note is silent, as to its bearing interest, when, in fact, it does bear interest, the variance is of such a nature, as to authorize the court, under the 1st and 2d sections of article 11 of the act concerning practice in courts of justice, to disregard it.

5. The books of the plaintiff, having been introduced in evidence by the defendant, it is no error to instruct the jury that they are competent evidence for the plaintiff.

6. If one promises to pay a sum of money, and the creditor undertakes, at the same time, to give the debtor employment, to enable him to pay the debt, the failure to give such employment, cannot discharge the debtor from his obligation. Such a case is not within the rule, which discharges the promissor, when prevented by the promissee, from performing the contract. Such failure may give the promissor a right of action against the promissee for damages, but he cannot plead it in discharge of his undertaking.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This was an action by petition under the act of 1849, *to reform pleadings and practice, &c.,* in favor of the plaintiffs against the defendant, as administrator of the estate of Richmond J. Curle, deceased.

The plaintiff's petition is founded on seven promissory notes, all made by Curle, defendant's intestate, or by Curle & Scott, of which firm Curle was a member. Four of the notes were made to the plaintiffs, and the other three they held as endorsees or assignees, and the seven notes, exclusive of interest, amounted to the sum of $3850 01.

The plaintiffs' petition was also founded on an account for money lent and advanced by the plaintiffs to the firm of Curle & Scott and for goods, wares and merchandize sold to them, in the aggregate amounting to the sum of $253 22.

Of the account annexed to the plaintiff's petition; six items were, as alleged in it for the amount of six drafts, making in the aggregate, exclusive of interest $4000, drawn by Curle & Scott on J. P. Eddy—one draft for $2000, drawn by J. P. Eddy on Beach & Eddy, favor of Curle & Scott, and one draft made by J. P. Eddy on Beach & Eddy, favor of Curle & Scott for $1200, which several drafts the plaintiffs alleged they paid, at the instance and for the accommodation of said Curle & Scott.

In the course of the trial, the last mentioned draft for $1200 was formally withdrawn by the plaintiffs from the consideration of the court and jury, and so entered the same of record.

At the return term, to wit, on the 5th of February, 1850, being the second day of the term, the defendant filed his answer, neither admitting nor denying the demand of the plaintiffs, but claimed, by way of set off to the plaintiffs' demand, the sum of $2007 50, evidenced by a check filed with said answer, purporting to have been drawn by Beach & Eddy, favor of C. H. Bolton or bearer, for $2007 50 on the Bank of Mo , and dated December 5th, 1846.

On the 9th of February, 1850, no replication having been filed to the set-off, the defendant filed his motion and asked the court to give judgment for the amount thereof; and on the 12th of Feb. 1850, the plaintiffs, pending said motion, filed their replication, alleging payment in full of the defendant's set-off; and on the 20th of March, 1850, the counsel heared the said motion of the defendant and overruled the same, and allowed the plaintiffs to file their replication to the defendant's set-off and the defendant at the time excepted to the ruling of the court.

At the trial the plaintiffs proved that they were merchants and co-partners, under the firm of Beach & Eddy, doing a wholesale dry goods business in the city of St. Louis, and had for several years last past.

It was also proved that Rich. J. Curle, the defendant's intestate, and John Scott were partners under the firm of Curle & Scott; that their co-partnership was formed in the fall of 1848, and continued up to the time of Curle's death, which occured in 1849. The making of all of the notes specified in the plaintiffs' petition, as well as the endorsements on three of them to the plaintiffs, were duly proved, and said notes were offered and read in evidence.

The defendant objected to the reading the notes in evidence, on the ground of variance between them and the petition, viz: that the notes were not described as negotiable and payable, nor as drawing interest. All of the said notes were drawn to order, and each of them contained the words negotiable and payable, &c., and in addition, one of them bore interest, at the rate of ten per cent., &c. The court overruled the defendant's objection, and said notes · were read in evidence to the jury.

It was also proved that Joseph A Eddy, one of the plaintiffs, and Josiah P. Eddy composed the firm of J. A. & J. P. Eddy; that said firm had existed for a number of years previous to transactions in this suit; that they did business under the firm of J. A. & J. P. Eddy in Ohio and Iowa, and that since the summer or fall of 1848 they had been the owners or lessees of a coal mine, known as the Kingston coal mines, near Pekin on the Illinois River in the State of Illinois.

· To prove their account, the plaintiffs called their book-keeper, who testified that the amount of the several drafts mentioned in said account, was advanced by the plaintiffs to Curle & Scott at or about the time said drafts bear date. This the witness could only state from the fact that he was book-keeper and cashier of the plaintiffs at the time. The original entries of the items of this account were made in the books of the plaintiffs, by their witness, and witness understood (but could not recollect how he got the information) at the time, that the money was furnished by the plaintiffs to Curle & Scott to enable them to fulfil their contract to transport coal from the Kingston coal mines; that all the drafts were given for the purchase of the steamer Pekin for Curle & Scott and for their benefit, and that the drafts had been in the plaintiff's possession since they became due and were paid. This witness testified also, that the signatures of Curle & Scott on said drafts were made by Curle, and that Curle & Scott at the time said drafts were made and since had no funds in the hands of the plaintiffs; nor were the plaintiffs indebted to said Curle & Scott when said drafts were made or became due

In regard to the draft for $1200, dated January 29, 1849, this witness stated that it was made for accommodation of Scott & Curle; that they got the proceeds of it from the plaintiffs; that Curle was in plaintiffs' store for money at the time, and witness said he was *quite sure* Curle got the proceeds of this draft.

John Scott, late co-partner of Curle (under the name of Curle & Scott) called by plaintiffs, testified that Curle & Scott got the proceeds of all the drafts in question except the draft for $2000, dated January 29, 1849, which he knew nothing about.

On cross-examination of this witness, defendant offered to prove that a certain verbal contract had been made between J. A. & J. P. Eddy and Curle & Scott, in relation to the sale and transhipment of certain coal from the Kingston coal mines, and that the money obtained on the drafts in question was on account of said contract. The plaintiffs objected to the introduction of such testimony, and objected to any testimouy in respect to any such contract or any other contract between J. A. & J P. Eddy and Curle & Scott as irrelevant, but the court overruled the plaintiffs' objection and the witness was allowed to state—that on or about the 13th of October 1848, a verbal agreement was made between J. A. & J. P. Eddy of one part, and Curle & Scott of the other, to the effect that the Messrs. Eddy were to furnish and deliver to Curle & Scott, at the Kingston coal mines in Illinois, at six cents per bushel, a sufficient supply of coal for their boats and not send or sell any coal to others, south of said coal mines. Curle & Scott were to transport the coal at their own cost and risk to St. Louis and dispose of the same, and after paying to the Messrs. Eddy six cents per bushel (the price agreed to be paid on delivery at the mines) the surplus proceeds of said coal was to be applied to the payment and satisfaction of the money or credits given and advances made to

Beach & Eddy vs. Curle's adm'r.

Curle & Scott to enable them to purchase their boats, and which were purchased by them for the purpose of transporting the said coal; that the Messrs. E., by their agreement were to advance funds to the amount of $4,500, to enable Curle & Scott to buy boats, &c.

This witness also stated that the money specified in the several drafts refused in the plaintiffs' account, was used for the purpose of buying a boat, by Curle & Scott, which they designed to use for the transportation of coal under said agreement; that the purchase of said boat, by Curle & Scott, was partly for cash and part on credit; that the persons of whom they purchased were willing to take Beach & Eddy (the plaintiffs) as security and the drafts or securities in question, specified in the account, were made or put in this form in order to get Beach & Eddy's name on them.

It was proved that Curle & Scott were informed by the Messrs. E, at different times in the fall of 1848, that there was coal ready for transportation; that C. & S. proceeded with their boat to the coal mines at Kingston, but found no coal ready for them. Three trips from St. Louis to the coal mines were made by the boats of C. & S. without getting coal. The fourth and fifth trips they brought down to St. Louis, in all, not exceeding 1600 bushels, which was sold by C. & S. for sixteen cents per bushel, and the proceeds used by them. Almost any quantity of the coal could have been sold in St. Louis in the fall of 1848 for sixteen cents per bushel. The expense of running the boat was about $45 00 per day, and in all the trips to and from the mines they carried freight and passengers, and the receipts from this source were about one-third of the cost of running the boat. Curle & Scott on one of the trips received $400 for assisting another boat with theirs. The boat started about the last of December 1848 on its sixth trip to the mine, freighted, as usual, with cargo and passengers; this boat had proceeded some distance up the Mississippi river; when, owing to the cold weather and running ice, was not able to proceed, and attempted to return to St. Louis, and when near the mouth of the Missouri river on its return (for the cause last mentioned) the boat was sunk and lost, by the casualties of the navigation. This was the termination of all efforts on either side to execute the agreement in respect to the delivery, transportation and sale of coal.

It was proved that the Messrs. E, admitted that Curle and Scott had sustained damages by reason of there not being a sufficient quantity of coal furnished them to keep their boat employed; but no amount was specified or admitted. The plaintiffs offered testimony tending to prove that by reason of prevailing sickness at the coal mines and consequent difficulties in procuring laborers, they were unable to excavate or have coal ready; but the court at the in stance of the defendants, excluded the testimony so offered by the plaintiffs.

It was proved that at the time these several drafts mentioned in the plaintiffs' account were made, accepted and paid, the plaintiffs were not indebted to C. & S., nor had the latter any funds or property in the hands of the plaintiffs against which the drafts were drawn; nor were J. A. & J. P. Eddy, nor J. P. Eddy indebted to Curle & Scott; nor had the latter any money or property in the hands of either said J. A. & J. P. Eddy or J. P. Eddy against which said drafts were drawn.

It was proved that the several drafts specified in the plaintiffs' account were paid by the plaintiffs, and they had them in their possession from the time of such payment, and produced them at the trial. The items of plaintiffs account for merchandise were fully proved and payment of the check for $2007 50, mentioned by way of set off in the defendants' answer was fully proved.

The defendant produced in evidence to the jury an account between Curle & Scott and the plaintiff, as the same appears on the books of the latter. From the ledger of the plaintiffs, thus produced in evidence, it appeared that the several drafts specified in the account annexed to the plaintiffs' petition, were regularly charged against Curle & Scott as so much money paid, laid out and expended to and for the use of Curle & Scott.

Abstract from plaintiffs' ledger:

The balance with the interest account up to August 1st, 1849, included, as shown in the account of Curle & Scott on the ledger of Beach & Eddy as shown by the books produced, is················ ···· ······ ···· ······ ···· ······ ······ ···· ···· ···· $5,868 64

Beach & Eddy vs. Curle's adm'r.

Bill of merchandise ················································· 54 73
Individual account of R J. Cnrle ······························· 1,663 01

Total ··········································· $7,586 38

The defendant also produced in evidence an account presented by the plaintiffs before the probate court at the December term 1849, against the estate of Curle, from which it appears that the aggregate amount claimed by the plaintiffs there was $7,586 38, interest included. The several notes and drafts specified in the plaintiffs' petition in this suit, were also embraced in the said account so presented before the probate court.

It was proved that the Messrs. Eddy, without the consent of Curle & Scott, sent and sold coal south of said coal mines, to other persons; but the quantity or value thus sent or sold was not stated. Complaint was made to the Messrs. Eddy by C. & S.. on account of there not being a sufficient quantity of coal ready for them at the mines and also on account of the sending and sale of coal to others south of the mines.

It was in proof also, that C. & S. transport from the mines to Beardstown, about 3000 bushels of coal which was sold at ten cents per bushel, the proceeds of which the Messrs. Eddy received, and the whole amount carried away from the mines by C. & S. under their agreement with the Messrs. Eddy, do not exceed $5000. C. & S. kept boats lying at the mines all the time and ready to receive coal, up to the time of the sinking of their steamboat, Pekin. After the Pekin sunk they did not again try to proceed or furnish boats, nor did they attempt or endavor to do any thing further under their coal contract with the Messrs. Eddy.

This substantially was all the evidence in the case. The court then gave the following instructions at the instance of the plaintiffs, viz:

1. If the jury believe from the evidence that the bills mentioned in the plaintiffs' account sued on, were made by Curle & Scott, in part payment for a steamboat purchased by them and that the plaintiffs endorsed the said bills at the instance of the said Curle & Scott, and for their benefit and accommodation, and that the plaintiffs afterwards paid the said bills, they are entitled to recover in this action the whole amount so paid by them with interest from the time the several payments were made, to the present.

2. If the jury believe from the evidence that the money specified in the account of the plaintiffs or any of it was lent and advanced or paid, laid out and expended by the plaintiffs to Curle and Scott or for their use and benefit at their instance and request, the plaintiffs are entitled to recover in this action.

3. If the jury believe from the evidence that Curle & Scott received the money specified in the account sued on or any of it and that they had the use and benefit thereof, by way of accommodation or advance or to their use by the plaintiffs and that the drafts were made merely as matters of convenience to the parties to them or as voucher for the plaintiffs, they are entitled to recover in this action.

4. If the jury believe from the evidence that Curle & Scott purchased the steamboat Pekin, and that in order to pay for the same they requested or procured Beach & Eddy to assume and pay the purchase money therefor to third parties and that said Beach & Eddy did assume and pay the said purchase money or any of it, then the plaintiffs are entitled to recover for all sums that they have shown in evidence they thus paid, with interest from the time of payment to the present.

5. If the jury believe from the evidence that Curle & Scott, at the time they made the bills mentioned in the plaintiffs account, had no funds in the hands of the drawee of the said bills, and that the plaintiffs endorsed them for the accommodation of Curle & Scott, and that they passed said bills to other parties in part payment for a steamboat, purchased by Curle & Scott, and that the plaintiffs afterwards paid the said bills, the jury should find for the plaintiffs.

6. Possession and production of said bills by the plaintiffs is prima facie evidence that they paid them to the holder at the time said bills became due.

7. The account between the plaintiffs and Curle & Scott on the books of the plaintiffs produced in evidence by the defendant is competent evidence to prove the amount of money due from Curle & Scott to the plaintiffs; therefore, if the jury believe from the evidence that the money

mentioned in the account sued on, or any of it, is due from Curle & Scott to the plaintiffs, they should find for the plaintiffs.

8. The performance or non-performance of any contract between Curle & Scott and J. A. & J. P. Eddy respecting the delivery and transportation of coal, is no bar nor hindrance to the plaintiff's right of recovery for all sums of money due, for which they have shown in evidence they paid and advanced at the instance and for the benefit of Curle & Scott, therefore, notwithstanding the jury may believe from the evidence that there was an agreement between Curle & Scott and J. A. & J. P. Eddy, of the character spoken of by the witness, and that said contract was not performed on the part of said J. A. & J. P. Eddy, any damages sustained by Curle & Scott by reason of such non-performance, cannot be set off or recouped in this action.

The court of its own motion gave the following:

1. If J. A. & J. P. Eddy were bound in a contract to Curle & Scott, to furnish them with necessary funds to purchase a boat and other outfit for the transportation of coal from the Kingston mines, and if J. A. Eddy was then a member of the firm of Beach & Eddy, and if said J. A. Eddy, in order to raise the necessary means for the purchase of the boat and outfit, endorsed the drafts given in evidence in the name of Beach & Eddy, without the knowledge or consent of said Beach, and not at the instance or request of said Curle & Scott or either of them, but to enable himself to comply with his contract to make stipulated advances to Curle & Scott, then the plaintiffs cannot recover for the amount of said drafts.

2. That upon such of the drafts as were drawn upon the plaintiffs and accepted by them, the plaintiffs were prima facie the parties bound to pay the same, and the said drafts are evidence that the amount thereof was the indebtedness of the plaintiffs and not of Curle & Scott—the burden of proof to show the contrary is upon the plaintiffs. It is competent for the plaintiffs in this action to show that the acceptance and payment of said bills and drafts were in fact for the accommodation, use and benefit of the said Curle & Scott.

3. If the jury believe from the evidence that the money advanced and sued for in this action, or any part thereof was advanced by Beach & Eddy to J. A. Eddy and J. P. Eddy or either of them, or that the drafts drawn by Curle & Scott on J. P. Eddy and accepted by him were endorsed by Beach & Eddy at the instance of J. A. Eddy or J. P. Eddy and for the accommodation of either of them, and not at the instance of Curle & Scott or for their accommodation, then the plaintiffs cannot recover for such advances in this action.

To the giving of which instructions the defendant duly excepted.

The defendants asked the following instructions:

1. That the plaintiffs cannot recover in this action, upon the drafts drawn by Curle & Scott upon J. P. Eddy, accepted by him and payable to the order of the plaintiffs, and the jury will disregard as much of the plaintiff's petition as relates to the said drafts.

2. That if the drafts drawn by Curle & Scott upon J. P. Eddy in favor of Beach & Eddy were endorsed by J. A Eddy in the name of Beach & Eddy, not for the accommodation of Curle & Scott, but to enable J. A. & J. P. Eddy to raise the necessary funds to purchase a boat under a contract to that effect, then Curle & Scott are not liable to Beach & Eddy on said drafts in this suit.

3. That Curle & Scott are not liable upon the drafts drawn upon J. P. Eddy, unless the same were presented for payment on the days they severally became due and payment thereof was refused by said Eddy and notice of such failure to pay was given to said Curle & Scott or one of them on the same day or the day next thereafter.

4. That if J. A. & J. P. Eddy were bound in a contract to Curle & Scott to furnish them with the necessary funds to purchase a boat and other outfit for the transportation of coal from the Kingston mines, and if J. A. Eddy was then a member of the firm of Beach & Eddy and if the said J. A. Eddy in order to raise the necessary means for the purchase of said boat, endorsed the drafts given in evidence in the name of Beach & Eddy, without the knowledge or consent of the said Beach, and if the said J. A. & J. P. Eddy failed to comply with their contract with said Curle & Scott for the delivery of said coal, by reason of which the said Curle & Scott suffered a loss, the jury will deduct the amount of said loss from the amount of the plaintiff's claim.

5. That if J. A. & J. P. Eddy contracted with Curle & Scott to advance the necessary funds

Beach & Eddy vs. Curle's adm'r.

for the purchase of the boat, and if the drafts given in evidence, or any of them were given in payment for said boat, and if it was agreed between the Eddys and Curle & Scott that the money thus advanced was to be refunded out of the proceeds of the sale of coal transported by Curle & Scott from the Kingston mines, and if the said J. A. Eddy was then a member of the firm of Beach & Eddy and endorsed the said drafts in the name of Beach & Eddy for the purpose of raising money to purchase said boat in pursuance of the contract of the two Eddys with Curle & Scott, and if the said Curle & Scott were prevented by the said J. A. & J. P. Eddy from refunding the said money from the proceeds of the sale of the coal by reason of a failure of the said J. A. & J. P. Eddy to furnish said coal for transportation, then the plaintiffs are not entitled to recover for the amount so advanced and so prevented by the act of the two Eddys from being refunded.

Which instructions so asked by the defendants, the court refused to give to the jury, and the defendant duly excepted.

The jury returned a verdict for $8460, and the defendant filed a motion for a new trial, for the reasons following:

1. The verdict is against law and the evidence.
2. It is against the weight of evidence.
3. The damages are excessive.
4. The court misdirected the jury at the instance of the plaintiffs.
5. The court misdirected the jury to the prejudice of the defendant.
6. The court refused proper instructions asked for by defendant.
7. The court admitted incompetent evidence on behalf of the plaintiffs and refused to admit competent evidence offered by defendant. Which motion the court overruled, and the case is brought into this court by writ of error.

The following errors are assigned:

1. That the court erred in granting the instructions asked for by the defendants in error.
2. That the court erred in refusing instructions asked for by plaintiff in error.
3. That the court erred in admitting evidence offered by the defendants in error and in excluding evidence offered by plaintiff in error.
4. That the court erred in refusing the motion for a new trial.

CROCKETT, for plaintiff in error.

I. The practice act of 1849 requires replications to offsets to be filed within two days after the filing of the plea, unless the court, for good cause, should extend the time. In this case, the replication was not filed within the two days, nor until after there was a motion by the defendant for judgment, on the offset, and it was afterwards filed by leave of court, without showing the reason why it was not sooner filed. This proceeding was directly in the teeth of the statute.

II. There was such a variance between the witnesses declared on and those offered in evidence as to amount to a total failure of proof under the 3d section of the 11 article of the act of 1849, and the witnesses ought to have been excluded by the court.

III. The first instruction given for the plaintiffs' below was not only calculated to mislead the jury, but it does not declare the law as applicable to the facts in this case. Every fact supposed in said instruction, may be true, and yet the plaintiffs would not be entitled to recover. The second instruction is still more palpably liable to the same objection. The same remark is applicable to the third, which informs the jury that if Curle & Scott received or had the use or benefit of money advanced by the plaintiffs, the plaintiffs are entitled to recover. Thus entirely excluding from the jury all the conditions on which the money was advanced, and the mode by which it was to be repaid, according to the contract. Precisely the same objections lies to the fourth instruction, and also to the fifth. The seventh informs the jury that the books of the plaintiffs are competent evidence to prove the plaintiffs' account. This instruction was too broad and was calculated to mislead the jury.

IV. The eighth instruction was wholly erroneous, and required the jury only to find that the plaintiffs had advanced money to the defendant, in order to entitle them to recover, and expressly;informed the jury that the plaintiffs' recovery ought not to be barred by any contract made by the two Eddys, thereby excluding from the jury all consideration of the fact, whether Beach had any knowledge of the transaction—whether he was bound by the endorsement—whether Eddy had used the name of his firm for purposes of his own—whether Eddy had not in fact, agreed to take up the drafts with the money of Beach & Eddy and to wait till the same should be refunded out of the proceeds of the coal, and all the other circumstances of the transaction.

V. The first and third instructions given by the court of its own motion, are erroneous, because, although in part they properly declare the law, yet they tell the jury, that although the advances may have been made by the plaintiffs for the accommodation of the two Eddys, yet,if they were also made at the instance of Curle & Scott, or for their accommodation, the plaintiffs were entitled to recover. This is not the law. If they were made for the accommodation of the Eddys, it is wholly immaterial, whether it was done at the "instance ' of Curle & Scott, and under the facts as proved, it was in like manner immaterial whether it was for the "accommodation" of Curle & Scott, as well as the two Eddys. Both of said instructions, in order to bar the plaintiffs, required the jury to find that the advances were not made at the "instance or request" of Curle & Scott, even though they may have been made solely to enable the Eddys to comply with their contract and in fact for their accommodation. What matters it that Curle & Scott requested them to endorse the drafts, if in fact the endorsement was made by Joseph A. Eddy in the name of Beach & Eddy, to enable him to comply with his contract with Curle & Scott. The instructions are clearly erroneous in this respect, and were well calculated to mislead the jury.

VI. The instructions asked by defendant properly declare the law and ought to have been given. The first two only assert the principle that if the two Eddys had agreed to advance the money to purchase the boats, which was to be refunded out of the proceeds of the coal, and if the endorsements were made without the knowledge of Beach to enable the Eddys to comply with their contracts, then the plaintiffs cannot recover for such advances. If Joseph A. Eddy, of the firm of Beach & Eddy, made the endorsement with the agreement that he himself would take up the drafts at maturity, and would wait for the money until it was refunded by the sale of coal, with what propriety can it be claimed, that Curle & Scott shall refund the money to Beach Eddy, otherwise than as was agreed upon? Eddy had the right to bind his firm by the contract, for the payment of the drafs, as much as he could bind it by the endorsement. If the endorsement was obligatory, the contract which accompanied it was also obligatory. But according to the agreement of plaintiffs' counsel, the endorsement created an obligation on Curle & Scott; but the contract made with them at the same time by the same party who made the endorsement, did not bind the firm of *Beach & Eddy*, of which he was a member. If Joseph A. Eddy contracted on behalf of Beach & Eddy, that he or J. P. Eddy would take up the drafts at maturity, and would wait with Curle & Scott for the money until it could be refunded out of the coal, what valid reason can be given, why that contract is not obligatory on Beach *& Eddy*? I cannot comprehend the distinction by which it is attempted to be shown, that when J. A. Eddy made the endorsement, he was acting for Beach *& Eddy*, and his acts were binding on the firm; but when at the same time, he agreed that Curle & Scott should not be called upon for the money, until it would be made by the sale of coal, he was acting in his individual capacity, and such contract is not binding on his firm. It was all one act and cannot be split up so as to make so much of it obligatory as tended to the benefit of Beach *& Eddy*, and to repudiate so much of it as tended to the advantage of Curle & Scott.

VII. The third instruction of defendant ought to have been given. Curle & Scott, under the facts were entitled to notice of non-payment. *prima facie* they were not the parties to pay the drafts, nor were they so in fact, as the proof shows. They had the right to suppose that the drafts would be paid by the Eddys, and in point of fact they had funds in their hands

for the purpose of paying the drafts, the Eddys having agreed to furnish the money to buy the boats. But if the acceptor or endorser agrees to take up a draft for a valuable consideration, the drawer is entitled to notice, whether he had funds in the hands of the drawee or not. Every consideration which renders a notice necessary in any case, applies in this. If the drafts were not paid at maturity by the Eddys, it was of the utmost importance to Curle & Scott to know it, that they might look after their interests. This instruction ought evidently to have been given.

VIII. The fourth and fifth instructions of defendant are also good and ought to have been given.

## Todd & Krum, for defendant in error.

I. The court below did not err in overruling the appellant's motion for judgment for the amount of his set-off. It would be an anomaly in judicial proceedings, that a defendant should have judgment for a part of the subject in controversy, while the issue in the suit remained undetermined.

As the practice stood before the code of 1849, the only step a party could take in such a case, was, to move for judgment of *non pros* for want of replication.

Under the code of 1849, the only effect of not replying to a set-off, within the time required by section 9, article 6, is, that the set-off in such case is admitted.

The record in this case shows, that pending the defendant's motion for judgment, for the amount of his set-off the plaintiff moved the court for leave to reply to the set-off, which leave was granted. Asking leave to reply was a matter addressed to the discretion of the court and manifestly in furtherance of justice. Allowing the plaintiffs to reply did not affect the substantial rights of the defendant and the judgment of the court below will not be reversed for this cause—Code 1849, sections 3, 5 and 7 article 11.

But this question has been decided by this court against the position of the appellants.

The defendants had six days (Sundays excepted) in which to answer, and the plaintiffs were not required to reply before the rule expired, notwithstanding the defendant may have filed his answer and set-off on the second day of the term. The plaintiffs' reply was filed on the 6th day of the term. If it had not been filed until the 8th day, it would have been in time—9 Mo. Rep. 142.

II. The court below did not err in allowing the notes specified in the plaintiffs' petition to be read in evidence. There was in fact no variance, for the notes were severally described in the petition of each annexed thereto at the time of bringing the suit.

Under the code of 1849, section 1, article 11, no variance between the petition and proof will be regarded, unless it actually misleads the adverse party to his prejudice upon the merits. If the alleged variance was material, the defendant should have taken his remedy in the manner pointed out by the code—Section 1 article 11, by making affidavit, showing in what particular the parties were misled, and presenting his application to the court below to correct the error.

III. The instructions asked by the plaintiffs, and given by the court below, assert correct principles of law. The only matters of fact controverted by the defendant, were in respect to the plaintiffs' claim for money lent and advanced, paid, laid out and expended, &c., &c.

The instructions asked by the plaintiffs, from one to five inclusive, simply declare what facts the jury should find from the evidence to entitle the plaintiffs to recover. These five instructions, enunciate plain and well established rules of law, and they were applicable to the facts in this case.

IV. The sixth and seventh instructions assert correct principles of law, in respect to the competency of a portion of the plaintiffs' evidence and declare what the evidence in each of the instructions tended to prove.

8

This is especially true in respect to the seventh instruction. The defendant introduced the plaintiffs' books in evidence. It cannot be denied but that the books, or rather the account hus introduced was competent, as tending to prove the indebtedness of Curle & Scott to the plaintiffs.

V. The eighth instruction asserts a correct rule of law, and applicable to the facts of the case. Curle and Curle & Scott were indebted to Beach & Eddy, or they were not. If they were indebted in manner and form, as the plaintiffs claim, then any agreement for the delivery, transportation and sale of coal, cannot defeat the plaintiffs' right of recovery, nor, in any wise affect them.

If the credits, advances, &c., to Curle & Scott, were made by J. A. & J. P. Eddy and not by Beach & Eddy, the latter of course cannot recover the account sued for.

This whole question was fairly and distinctly placed before the jury by this instruction. Under it the jury was bound to declare whether the plaintiffs had advanced, paid and laid out money, etc., for Curle & Scott; if so, then the court said in effect, that the breach of any contract between other parties, could not defeat the plaintiffs' right of recovery.

VI. All of the instructions given by the court on its own motion, Nos. 1, 2 and 3, all favorable to the defendant, as much so as could be asked under the facts in the case. The giving of these three instructions do not afford any ground for reversing the judgment or of complaint.

VII. Instruction number one, asked by the defendant and refused, was properly refused, because it was altogether out of the case. The plaintiff did not claim or seek to recover upon the drafts drawn by Curle & Scott on J. P. Eddy. The drafts were introduced incidentally, and formed a link in the charn of evidence, and not at the foundation of the plaintiffs' suit. The instruction was calculated to mislead the jury and should not have been given.

The same may be said of instruction number two, asked by the defendant and refused. There was no evidence in the case on which to predicate such an instruction, There was no evidence either proving or tending to prove that if J. A. Eddy endorsed the draft in question in the name of Beach & Eddy, to enable J. A. & J. P. Eddy to raise the necessary funds to purchase a boat, &c. This instruction was therefore properly refused.

VIII. The third instruction asked by the defendant and refused, does not assert a correct rule of law, upon the facts in this case. As a general rule it is conceded, that the drawer of a bill, in case he has funds in the hands of the drawer. or is authorized to draw or has a reasonable expectation that his draft will be duly honored, is not liable unless notice be given him of the dishonor of the bill, &c.

But an exception to this general rule is equally well established, viz: That where the drawer of a bill has no funds in the hands of a drawer—no authority to draw or no reasonable expectation that his bill would be honored, he is not entitled to notice of its dishonor, he is primarily liable.

The evidence in the case is very conclusive, that Curle & Scott had no funds in the hands of J. P. Eddy—no authority to draw bills on him—nor was it shown; that at the time of drawing their bills, C. & S. had any reasonable expectation that their bills would be honored. But the overruling consideration in respect to this instruction is, that there was evidence tending to prove that the drafts in question were made merely as vouchers or matters of convenience between the several parties to them, the money or amount of them having been in fact advanced or paid out by Beach & Eddy for Curle & Scott, at their instance and request, &c.

This instruction takes from the jury all consideration of this material fact, We say, therefore, that the court properly refused this instruction.

IX. The fourth and fifth instructions asked by defendant and refused, are substantially the same. They assert the same principle, and both are equally erroneous. We maintain that both were properly refused.

1. Because there was no evidence in the case, on which to found either of the instructions in the form in which they are asked

2. Because the court on its own motion instructed the jury fully and highly favorable for

the defendant on the points to which each of these instructions are directed. *Vide*—Instructions by the court on its own motion.

There is therefore no error in refusing these two instructions (Nos. 4 and 5.)

X. The court did not exclude any testimony offered by the defendant, which was material to his defence. In fact, it does not appear from the bill of exceptions that the court excluded any testimony offerred by the defendant; nor does it appear from the bill of exceptions that the court admitted any testimony which was objected to by the defendant, except the notes which have already been considered.

XI. The court did not err in overruling the motion for a new trial, on the grounds assigned, that the verdict was against the weight of evidence or that the damages are excessive.

1. Because there is conflicting testimony in respect to the matters involved in the controversy, and the jury were the proper judges of the weight and credibility of the testimony.

2. Because the testimony is sufficient to authorize the jury to find the amount of damages they assessed.

XII. It is contended by the counsel for the plaintiff in error, that the first and second instruction, asked by the plaintiffs below and given by the court, are erroneous; because it is assumed by the counsel that Beach & Eddy *were to pay* the drafts mentioned, whereas, the testimony of Scott and other witnesses shows that the drafts were to have been paid out of monies that were expected to have been realized from sales of coal.

Beach & Eddy were bound to pay said drafts, it is true, not by any contract or agreement, extraneous from the drafts, but because they were parties to said drafts.

This is the only way that Beach & Eddy became bound to pay said drafts.


SCOTT, J., delivered the opinion of the court.

The first question in this cause arises from the action of the court below in making up the issues. The statute requires replications to set offs, to be filed within two days after the filing of the plea, unless the court, for good cause, should extend the time. The replication was not filed within two days from the time of filing the plea, but within the time allowed by law for filing a demurrer or answer to the plaintiff's petition. The defendant has six days for answering; he may at any time within that period file it; if he file it within less time than is required, the plaintiff must, in two days, reply to his set off. This seems plain under the statute. The leave of the court, extending the time of replying, although it seems unsupported by any good reason therefor, is not such an error as would induce this court to reverse the judgment. It does not appear that any injury was sustained by the defendant, or that the merits of the controversy were at all affected by it.

We are not prepared to say, that the acceptances were required to be filed with the petition, which was in the nature of an assumpsit for money paid, laid out and expended; but if they were, there was no variance. In the petition they were called promissory notes, and it turns out in proof that they were also negotiable. Where is the variance in this? All negotiable notes are promissory. If the description of the note was silent, as to its bearing interest, when, in fact, it did bear in-

terest, the variance was of such a character as authorized the court, under the first and second sections of article eleven of the code, in disregarding it.

We see no objections to the first and second instructions for the plaintiffs. They certainly contain a correct exposition of the law applicable to this case. It was not necessary that the court should give the negative instruction, that if the money was not advanced by Beach & Eddy, at the instance of Curle & Scott, that they would find for the defendant. The instructions given, clearly convey to the jury the idea, that unless the money was paid by Beach & Eddy, at the instance of Curle & Scott, no recovery could be had. Moreover, the instruction by the court, at its own instance, sets forth this matter in a way not to be misunderstood by the jury, and perhaps a little too favorable for the defendant. There was certainly nothing in the instruction of which the defendant can justly complain. The third and fourth instructions contain law applicable to the case. It was not necessary that they should refer to any contract or undertaking between the firms of Eddy & Eddy and Curle & Scott. Eddy & Eddy was a different concern from that of Beach & Eddy, and their contracts with Curle & Scott could not affect Beach & Eddy.

The books of the plaintiff having been introduced in evidence by the defendants, there was no error in telling the jury that they were competent evidence for the plaintiffs.

We see no objection to the 8th instruction of the plaintiffs. It is obvious, that no contract between Eddy & Eddy and Curle & Scott, could affect the transactions between Beach & Eddy and Curle & Scott.

The instructions given by the court, at its own instance, are not liable to the objections urged against them. The defendant cannot assume that Beach disclaimed the acts of his partner, Eddy. He is not here complaining that his name has been used in a transaction, alien to his partnership with Eddy. By bringing this suit he has affirmed the acts of his partner, Eddy, and if he is willing to abide by them, it is not for a stranger to interpose any objection for him. The court had repeatedly told the jury, that in order to enable the plaintiff to recover, the money must have been advanced at the instance of Curle & Scott. Under this instruction, had it been advanced at the instance of Eddy & Eddy, the jury must certainly have understood that the verdict should be for the defendant.

The first instruction of the defendant, related to drafts, for the amount of which, no recovery was sought. The second instruction had, in effect, been repeatedly given. If the acceptance of Beach & Eddy

were not at the instance and for the accommodation of Curle & Scott, the plaintiffs could not recover.

The third instruction, as to notice to the drawer, was inapplicable to the case, as all the evidence showed that the payment of Beach & Eddy were for the accommodation of Curle & Scott—that there were no funds in the hands of the drawers. From the circumstances in this case, it is clear, that Curle & Scott were not entitled to notice. The other two instructions may be considered together. If Beach consented to the use of the name of his firm, to enable one of its members to obtain money on credit, it is not perceived, on what principle he would be liable on any contract his partner alone might make respecting the money. It is asked, that if Beach & Eddy can agree, that each partner may use the name of the firm, to raise money for his individual use, why may he not agree as to the manner in which that money shall be repaid. It is certainly competent for Beach & Eddy to make such a contract. But because he lets a member of his firm use the money of the firm in his private concerns, he does not thereby make himself a party to the individual contract. It was the understanding between the Eddys and Curle & Scott, that Beach & Eddy's names were to be used on the paper. In consenting to this arrangement, Curle & Scott must have known that any demand that mght accrue to them from a breach of contract, on the part of the Eddys, would not affect the claim of Beach & Eddy against them. The idea of the defendant is, that Eddy in agreeing with Curle & Scott, to use the acceptance of Beach & Eddy, at the same time agreed that the money advanced by them should be paid as was stipulated between the Eddys and Curle & Scott. The evidence does not warrant this view of the subject.

The last instruction does not contain a correct proposition. If one promise to pay a sum of money, and the creditor undertakes at the same time, to give the debtor employment, to enable him to pay the debt, the failure to give the employment cannot discharge the debtor from his obligation. Such a case is not within the rule which discharges the promissor where he has been prevented, by the act of the promissee, from performing the contract. It may give the debtor a right of action against his creditor for damages, but it is obvious that it would be a violation of justice to permit him to plead such a failure in discharge of his undertaking. It would be assuming that the measure of damages for the breach of such a contract, would be equal to the debt, whereas, in fact, no damages may have been sustained. Eddy & Eddy undertook to supply coal to Curle & Scott for transportation, that by the profits of such employment, they might pay the advances made to them;

and they agreed to wait for such advances until they could thus be returned. There was no time limited for the performance of the undertaking of Eddy & Eddy. They were, it seems, prevented by sickness, from furnishing the coal as soon as they expected. Curle dies—all his plans are frustated, and suit is brought. On what principle can the recovery of the advances be now resisted?

Judge Ryland concurring, the judgment will be affirmed.