GUETZKOW, Respondent, vs. THE MICHIGAN MUTUAL LIFE INSURANCE COMPANY, Appellant.

*January 9 — February 2, 1900.*

*Life insurance: Forfeiture: Premium note: Extension of time of payment.*

1. Where a life insurance policy provided that a note might be given for premiums, and that the effect of default in the payment of such note was to suspend the right to recovery for any loss occurring pending the default, *held*, that the insured had the right to pay such extension note at any time after it was due, and before loss, and that when so paid no forfeiture occurred.
2. Where a life insurance company, prior to the maturity of an annual premium, had insisted that the insurance was terminated, and could not be revived except by furnishing a health certificate, on grounds which it could not maintain, it cannot predicate a forfeiture upon an omission by the insured to pay an annual premium, which its own conduct has helped to bring about.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

Plaintiff's decedent, Henry Guetzkow, held a policy upon his own life, issued by the defendant company, dated December 14, 1894, conditioned upon the payment of an annual premium of $136.50 on or before noon of the 14th day of December in each year. It recognized that the time of payment of these premiums might be extended by the giving of notes, and that such notes should be deemed not payment but only extensions, "and, if any such note or any renewal thereof shall not be fully paid when due, then for any loss occurring while such note or other obligation remains due and unpaid the company shall not be liable." It also provided: "No agent has authority to deliver a renewal receipt upon this policy after the day when the [annual] premium falls due, without at the same time taking a certificate of good health of the insured." The premium of December 14,

1894, was duly paid. The premium of December 14, 1895, was extended by the giving of notes, of which the last one, of $55, was due November 14 or 15, 1896. On November 12, before this note was due, the insured being then confined to the house by illness, his brother Louis Guetzkow went to the state agent of the company, Noyes, who held this note for collection, and asked for an extension of a week or two, which was accorded him upon condition of giving his own duebill for the amount, which he gave. On November 25 the same Louis Guetzkow tendered the money. The agent demanded, as a condition of receiving it, a health certificate, which Louis told him he could not give, as his brother was sick. The agent persisted in the refusal unless that condition was complied with. About ten days after the 25th, Noyes came to Louis Guetzkow's room and offered to return the duebill, when Louis told him he wanted to pay it. He replied that he could not accept payment, and, throwing the duebill on the porch, went away. Shortly after the 25th, another brother, Rudolph, endeavored to persuade the agent to accept the money, but he still insisted on a health certificate. The annual premium of $136.50 due December 14, 1896, was not paid. Rudolph Guetzkow testifies that the reason for omitting such payment was the refusal already made to accept the balance of the former one without a health certificate. On January 9, 1897, a further tender of payment of the $55 note was made to the agent, Noyes, and refused; and on January 11th a tender was made of the annual premium of $136.50, and refused. On January 13 the agent, Noyes, came to the office of Guetzkow's attorney, Mr. O. T. Williams, and requested payment of the $55 note, which Mr. Williams at once made by his check, and at the same time offered to pay the premium of $136.50 which was due under the policy December 14, 1896, which, however, the agent refused to accept. Henry Guetzkow died on January 21, 1897.

At the close of the plaintiff's evidence both parties rested, and both moved for a direction of the verdict. The court directed a verdict in favor of the plaintiff for the amount of the policy less the $136.50 unpaid premium and interest, for which amount judgment was entered, from which the defendant appeals.

*W. J. Kershaw*, for the appellant, contended, *inter alia*, that a motion for nonsuit should have been granted, because the third annual premium had not even been tendered until nearly a month after it became due. *Thompson v. Ins. Co.* 104 U. S. 252; *Lantz v. Vermont L. Ins. Co.* 139 Pa. St. 546; *Marvin v. Universal L. Ins. Co.* 85 N. Y. 278; *Lamb v. Prudential Ins. Co.* 22 App. Div. (N. Y.), 552. There was no waiver or estoppel in collecting the balance due on the second annual premium. *Joliffe v. Madison M. Ins. Co.* 39 Wis. 111; *Schimp v. Cedar Rapids Ins. Co.* 124 Ill. 354; *Mandego v. Centennial M. L. Asso.* 64 Iowa, 134.

For the respondent there was a brief by *Geo. L. Williams*, and oral argument by *Mr. Williams* and *Mr. A. B. May*.

DODGE, J. The question presented is whether there was any evidence to go to the jury to establish a forfeiture of the policy sued on. No such condition resulted from default in the payment of the extension note of $55, whether we hold the extension of that note on November 12 effective or not; for by the terms of the policy the only effect of such default was to suspend the right of recovery for any loss occurring pending the default. The insured had the right to pay such extension note at any time after it was due, and before loss. He tendered such payment on the 25th of November, and in fact made such payment on the 13th day of January, and before his death.

But it is contended that the failure to pay the annual premium on December 14 terminated the policy. Doubtless.

such failure would accomplish that result, unless it be excused. Prior to that time the company had insisted that the insurance was terminated, and could not be revived except by furnishing a health certificate, which confessedly the insured was unable to do. If the position of the company was right, the tender of the annual premium at its maturity on December 14 would have been utterly futile. The same reasons which led the company to refuse the payment of the $55 would also lead it to refuse the premium, as in fact it did when tendered. The insured could no more furnish a health certificate on December 14 than on November 25. The rule of law is maintained with great unanimity that one party cannot predicate a forfeiture upon an omission by the other which his own conduct has helped to bring about; that the declaration that a policy of insurance is already forfeited will constitute a sufficient justification for the omission to tender subsequently accruing premiums or instalments, upon the ground that the assured is justified in believing that no tender would be accepted, and the formality is therefore unnecessary; that the law will not require the doing of a vain thing. 2 Joyce, Ins. § 1123; *Shaw v. Republic L. Ins. Co.* 69 N. Y. 286; *Girard L. Ins. Co. v. Mut. L. Ins. Co.* 86 Pa. St. 236; *Nat. Mut. Ins. Co. v. Home Ben. Soc.* 181 Pa. St. 448. We are satisfied that the defendant's conduct justified the insured in believing that the annual premium would not be accepted on December 14 without a health certificate, and, within the rule of law above stated, he was therefore excused from making that tender, and is in precisely the same situation as if it had been made; from which results the conclusion that no forfeiture of the policy had taken place, but that it was in full force at the time of his death. No other defense being tendered, and there being being no conflict in the evidence, the court below was justified in directing the jury to render a verdict for the plaintiff.

The foregoing is the only error urged upon us by argument, although seventeen are assigned. As frequently stated, this court will not ordinarily examine assignments of error which the appellant does not deem worthy of argument either orally or in his brief.

*By the Court.*— Judgment affirmed.