WUERFLER, Appellant, vs. THE TRUSTEES OF THE GRAND GROVE OF WISCONSIN OF THE ORDER OF DRUIDS, Respondent.

*November 12—November 28, 1902.*

*Life insurance: Benefit societies: Transactions with members:* Ultra vires: *Contracts: Constitution of benefit society: Amendments: Certificate of membership: Voluntary associations, when subject to judicial control: Payment of dues: Waiver: By-laws: Conditions: Pleading.*

1. Transactions between a benefit society and its members are governed by the rule, that when a contract made by a corporation has been so far executed that to allow the corporation to repu-

diate it would work injustice to the other party thereto, who has in good faith relied thereon, the doctrine of estoppel applies and prevents repudiation, regardless of whether the corporation had a right to make it or not, unless the act of the corporation was in violation of some written law of the state, or of sound public policy.

2. A certificate issued by a benefit society to a member pursuant to the then existing constitution of the society, and on which he has in good faith relied and paid his dues, cannot be avoided by the society on the ground of *ultra vires*, because an amendment to the constitution, authorizing the issuing of such certificate and under which it was in fact issued, was not made in the particular method provided by the constitution.

3. W. had been a member of a benefit society for over twenty years prior to his death in 1897. Prior to 1894 the limit of death benefits incident to membership was $500. In 1894 there was an attempted change of the constitution increasing the limit of death benefits to $1,000. Under such change the society worked and issued its certificate to W., who paid the dues required thereunder. In 1896 the society again amended its constitution entirely doing away with all existing contracts, and providing for a death benefit of an indefinite sum. W., on request to surrender his certificate, refused to do so, insisting on his rights thereunder. *Held*, that the certificate, issued to W. pursuant to the constitution as it stood after the attempted amendment in 1894, was binding on the parties at the time of the amendment in 1896.

4. A certificate issued to a member of a benefit society provided that the contract stated therein was subject to all existing by-laws, rules, and regulations of the order, *and all that might be made*. *Held*, that such reserve power warranted only those variances required in matters of detail necessary or advisable in carrying out efficiently the fundamental principle or scheme of insurance, not in changing the plan itself and nullifying all contracts entered into under it.

5. An amendment of the constitution of a benefit society, providing that certificates of membership on which members have paid assessments on the basis of a death benefit of $1,000 shall be canceled, and substituting a death benefit indefinite in amount, is not a reasonable variance of the contract with the member, within a reserved power, made a part of the contract of insurance, to make future changes in the rules, by-laws, and regulations of the society.

6. In matters of discipline and policy, not manifestly violating private rights, voluntary associations are supreme and independ-

ent of judicial control, but when they proceed so arbitrarily as to manifestly violate the private rights of their members, they are amenable to the law the same as any other person, natural or artificial.

7. The action of a benefit society in notifying a member, while he yet has ample time to pay his dues, that his certificate would not be recognized as in force, effectively waives further payments so long as such attitude in that regard continues.

8. A by-law of a benefit society providing that, in case of any differences between a member or his heirs and his lodge concerning benefits, the member or his heir should "have the right and the duty to apply to the grand lodge" before commencing action, does not apply where the society denies that the person bringing an action had the right of membership.

9. Compliance with such by-law not being made a condition of a right, but a condition of invoking judicial remedies to enforce a right, is waived by failure to plead it by answer, the complaint being so framed that no opportunity was afforded to take advantage thereof by demurrer.

10. Such by-law, in effect, binding the member or heir, if at all, to submit the controversy to arbitration, compliance therewith is waived by an unqualified denial by the society of all liability.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Action to recover on a benefit certificate issued by defendant order to Friedrich Wuerfler, plaintiff being his widow. By the complaint it was alleged, in addition to stating plaintiff's right to maintain the suit if the certificate was in force at Wuerfler's death, that defendant was a society recognized by sec. 2002, Stats. 1898, having a grand grove or lodge with subordinate groves or lodges; that it furnished insurance to its members from about 1894 to 1897 in the sum of $1,000 each, payable ninety days after proof of death, such member being in good standing in the order at the time of his decease; that Wuerfler, for twenty years before he died, which was March 23, 1897, was a member of such order in good standing, and belonged to Walhalla Grove, No. 2; that till about 1895 certificates of membership in the order were not issued; that about that time the custom of issuing certificates com-

menced, and one was issued to Wuerfler, a copy of which is attached to the complaint; that it provided, upon the death of the member in good standing, he having complied with all the laws, rules, and regulations of the order and of the benefit fund, for payment of $1,000 to his widow; that Wuerfler was a member of the order in good standing when he died; that due proof of death was made and all the conditions of the certificate complied with, requisite to entitle plaintiff to the death benefits secured by her husband's membership; but that the order has refused to allow her to participate in the benefit fund of the order, though the time for payment upon the certificate has expired.

Defendant by its answer put in issue the allegations of the complaint as to Wuerfler's being a member of the order in good standing when he died, and alleged that, by the constitution of the order of 1870, it was empowered to insure members for $500 each, payable to the widow or next of kin; that the order had power to amend its constitution, but did not exercise it till 1896; that it then did so, the change taking effect prior to February 4, 1897; that thereby each member of one class was required to pay an assessment of $1 upon the death of any member, and others were required to pay into the benefit fund at such times according to a schedule arranged with respect to ages; that the death benefits in each instance, by the change, were limited to the amount actually paid into the fund on account thereof, not exceeding $1,000, instead of a fixed sum of $500 according to the constitution prior thereto, or $1,000 according to an attempted change in such original constitution made in 1894; that by the constitution as amended, the same as before, if a member failed to pay his assessment by the end of the month in which it was made, such failure *ipso facto* terminated his membership; that Wuerfler made such a default as to three assessments in February, 1897, by reason whereof his membership ceased.

Evidence was produced establishing plaintiff's right to re-

cover either the full amount claimed, being $1,000 and interest, according to the terms of the certificate of membership, or a sum between $462.60 and $511.07, if Wuerfler was a member of the order in good standing at the time of his death, according to the amended constitution. There was evidence that the original plan of the order had no insurance feature; that it was amended in 1870 by adding such feature and limiting the amount of the death benefit incident to each membership to $600; that the limit was changed in 1873 to $500; that there was an attempted change in 1894 increasing the limit to a fixed sum of $1,000, under which change the order worked until the change was made in 1896; that during such time the certificate in question was issued, and Wuerfler paid assessments to the order in accordance with such attempted change for some two years, and all other members did the same, and a large amount was paid out of the benefit fund so accumulated on account of matured memberships; that a change was made in the constitution in 1896 entirely doing away with all existing contracts and providing that all members of the order on January 1, 1897, should, upon the death of a member, pay into the death benefit fund $1, and that all other members on such an occasion should pay into such fund according to a schedule of rates arranged with respect to the ages of the members; that pursuant to such change February 4, 1897, all outstanding certificates and insurance obligations were declared at an end and the insurance feature of the order on the new basis; that prior thereto three assessments were made upon Wuerfler's membership, of eighty cents each, payable before the end of the month of February, 1897; that he refused to surrender his certificate when requested to do so by an officer of the company, insisting upon his rights thereunder; that for nonpayment of such assessments and lodge dues of fifty cents, his name was stricken from the rolls of the order in March, 1897; that the constitution of the order provided a particular

method of amending it, which was not complied with in the attempted change of 1894; that the insurance certificate issued provided that the contract stated therein was subject to all existing by-laws, rules, and regulations of the order, and all that might be made; that prior to Wuerfler's death he was sick for a considerable period of time, during which he was entitled to weekly pecuniary benefits from the order, which were regularly paid up to October 1, 1896; that thereafter he was entitled to $1 per week till he died, unless he waived the same, which defendant claimed was done and attempted to maintain the same by evidence. There was conflicting evidence as to whether Wuerfler directed his sick benefits of $1 per week from October 1, 1896, till he died, to be retained by the order and applied upon any charges there might be upon his membership for assessments on account of the benefit fund and for lodge dues. Evidence of plaintiff in regard to conversations heard by her between her husband and the treasurer of the lodge, to the effect that such benefits should be so retained and applied, and evidence that she, as agent of her husband, instructed such treasurer to so retain and apply such benefits, was rejected.

At the conclusion of the evidence plaintiff moved the court for a directed verdict, which was refused. The jury found specially that Wuerfler did not direct the treasurer of his lodge to retain his sick benefits and to use the same in payment of his assessments and lodge dues. Upon such finding and evidence the court directed verdict for defendant, and judgment was entered accordingly.

For the appellant there were briefs by *Sylvester, Scheiber & Orth,* and oral argument by *Fred. Scheiber.*

For the respondent there was a brief by *Julius E. Roehr,* and oral argument by *L. A. Brunckhorst.*

MARSHALL, J. Did the court err in refusing to direct a verdict for plaintiff, upon the undisputed facts of the case?

That proposition raises the only question that need be discussed on this appeal. It involves though, three minor propositions, which are as follows: (1) Was the certificate or policy of insurance, issued to Wuerfler pursuant to the constitution of the order as it stood after the attempted change in 1894, binding upon the parties at the time of the amendment of 1896? (2) Was the change in 1896, pursuant to which the attempt was made to call in all then outstanding certificates, an amendment of the rules and regulations of the order within the meaning of the certificate in question? (3) Did the failure of Wuerfler to pay the assessments upon his membership and lodge dues, not payable absolutely until the end of February, 1897, affect the validity of his certificate, since before that time such certificate was declared void by the order, and its attitude in that regard continued till such time of payment expired?

1. The first question must be answered in appellant's favor. It is so ruled by the familiar doctrine that when a contract made by a corporation has been so far executed that to allow the corporation to repudiate it would work injustice to the other party thereto, who has in good faith relied thereon, the doctrine of estoppel applies and prevents such repudiation regardless of whether the corporation had a right to make it or not, unless its act in that regard was in violation of some written law of the state or sound public policy; that in such circumstances, if the corporation exceeds its power, it commits a punishable offense against the sovereignty of the people, but cannot itself invoke the doctrine of *ultra vires* to avoid its act, at the same time inflicting a grievous wrong upon the one who has in good faith relied upon the assumption that it possessed in fact the power which it pretended to have authority to exercise. Whether that doctrine should be applied to transactions between benefit societies and their members has been a subject for consideration in many courts, and the decisions in respect thereto are by no

means harmonious. But the weight of authority is clearly
in favor of treating such societies substantially the same as
ordinary insurance companies and other corporations, as re-
gards their insurance contracts. The subject was fully dis-
cussed here in a very recent case. *Ledebuhr v. Wis. Trust
Co.* 112 Wis. 657, 88 N. W. 607, where the authorities are
collated to considerable extent. We will refer to that case
instead of going so soon over the subject again.

2. Respondent did not possess unlimited authority to
change its plan of insurance, giving the change retroactive
effect, under the reserve power, made a part of the insurance
contract, to make changes in the rules, by-laws, and regula-
tions of the order. Such a reserve power is held to warrant
only reasonable variances of insurance contracts,—variances
required, in the judgment of the order, in those matters of
detail necessary or advisable in carrying out efficiently the
fundamental principle or scheme of insurance, not changes
destroying it. Obviously, changes in the by-laws, rules, and
regulations regarding the execution of a plan of insurance
are quite different from changing the plan itself and nullify-
ing all contracts entered into under it, as was done in this
case. The essential features of the plan of insurance here
were that each certificate holder's beneficiary should receive
$1,000 upon and at the maturity of his contract, and that a
fund should be accumulated by assessments upon the mem-
berships in the order sufficient for that purpose. The way
was undoubtedly open for the order to make reasonable
changes respecting the hazards members might subject them-
selves to, and in regard to the number and amount of the
assessments, the time of payment thereof, the effect of de-
fault in such payment, the notice required of assessments to
put members in default, and many other matters of detail
that might be mentioned. But after a member had paid as-
sessments for a long period of time, contributing to accumu-
late money to meet the matured obligations of $1,000 each

to beneficiaries, a change in the constitution of the order
(the word "constitution" is here used as synonymous with
"by-laws") rendering the certificate at. maturity, instead of
worth $1,000, worth an indefinite amount and probably not
half that sum, cannot seriously be considered a reasonable
change in rules, regulations and by-laws as regards existing
contracts. Such a change is a complete abrogation of the
contract. It was so regarded in this case, as is evidenced by
the action of the order formally nullifying all outstanding
certificates and calling them in. It was supposed that the
order possessed power, without consent of the certificate
holders, to declare void the whole plan of insurance, under
which it had operated for some two years, during which time
many thousands of dollars had been paid into the death
fund by members in the expectation that their beneficiaries
would ultimately receive each $1,000; and that it possessed
such authority either upon the theory that the existing plan
was not legally adopted by the order in 1894, or under the
reserve power to make retroactive changes in by-laws, rules,
and regulations. The right of a benefit society is no broader
than that possessed by any other corporation as to making
by-laws. The power of every corporation in that regard has
its limits, which are at the boundaries of what is reasonable
under the circumstances of each case. Though that is deter-
minable, primarily, by the corporation, there is this legal
check upon it: If, resolving all fair doubts in favor of its
action, the boundaries of reason have been exceeded, to that
extent such action is *ultra vires*. *Stafford v. Chippewa*
*Valley E. R. Co.* 110 Wis. 331, 351, 85 N. W. 1036. It is
laid down as elementary that attempted changes in insurance
contracts between benefit societies and their members, under
the reserve power to amend by-laws, rules, and regulations,
which are manifestly unfair, are void, it being presumed
that in making such reservation both parties contemplated
only reasonable variances. Niblack, Ben. Soc. § 25; 1

Bacon, Ben. Soc. § 91a. The idea is that the doctrine that vested rights cannot be disturbed by retroactive laws applies to by-laws changing insurance contracts containing the reservation that they shall be subject to future changes in the by-laws, rules, and regulations of the order, society or company, obligated under the contract, to this extent: While, since the contract contains such stipulation, no vested right can grow up under it to be free from such changes, such a right is embodied in the contract as regards unfair variances thereof—those essentially changing the plan of insurance instead of merely changing matters of detail in working out such plan.

Though to a large extent voluntary associations are independent of judicial control, when they proceed so arbitrarily as to manifestly violate the private rights of their members they are amenable to the law the same as any other person, natural or artificial. In matters of discipline and policy not manifestly violating private rights they are as supreme within their own field as a religious society. But when they go beyond that, attempting to nullify their contracts of insurance and to substitute others therefor on an entirely different plan under the guise of changing by-laws, rules, and regulations for the efficient administration of a plan, they cross the line and enter upon a field where the right to proceed may be successfully challenged before judicial tribunals. *Supreme Lodge K. of P. v. Knight,* 117 Ind. 489, 20 N. E. 479.

We apprehend that the action of respondent would not have been taken except upon the theory that all outstanding certificates of insurance issued under the attempted amendment of the constitution of the order in 1894 were void. It was probably supposed, looking to the situation prior to such attempted amendment, under which beneficiaries were entitled to only $500, that the amendment of 1896 would not result in yielding materially less than such sum, and so would not exceed the reserved power. Had the outstanding

certificates been considered valid, we apprehend no attempt
would have been made to make such a radical change as to-
declare them void without consent of the holders, and to-
substitute contracts of an entirely different character in their
places.   Our conclusion is that the action of the order, under·
the circumstances, was manifestly arbitrary and unfair,——
one clearly not within the contemplation of the parties to the
certificate in question, and an invasion of the vested rights.
therein.

3. The last proposition is ruled in plaintiff's favor by
*Guetzkow v. Mich. Mut. L. Ins. Co.* 105 Wis. 448, 81 N. W..
652.   It was there held upon principle and authority that an:
insurance company cannot be sustained in taking a stand as
regards one of its policies which, if maintained, would ren--
der a tender of payment thereon by the policy holder useless,.
because the money would not be accepted as a compliance·
with the insurance contract, and then successfully plead fail--
ure to make such payment as a defense to the policy.   The·
action of respondent in notifying Wuerfler, while he yet had
ample time to pay his dues to the order, that his certificate·
would not be recognized as in force, effectually waived fur--
ther payments thereon so long as its attitude in that regard:
continued.

A point is made that the judgment is right irrespective of
whether the assignments of error are well taken, because of
a by-law of the order which formed a part of the insurance:
contract, providing:

"In case any differences of opinion  arise between any·
member and his lodge, or between the heirs of a member and
his lodge, concerning benefits coming to such member or his
heirs, such brother and his heirs shall have the right and the·
duty to apply to the grand lodge of the state of Wisconsin
before he or they commence any, action in any court of law."·

There- are several reasons why that does not affect appel--
lant's right: (1) On its face it does not appear to cover con-
troversies respecting whether a person is or is not a member-

of the order. It is confined to controversies within the order as between it and acknowledged members thereof or the heirs of such members. (2) Compliance with it is plainly not made a condition of a right but a condition of invoking judicial remedies to enforce a right; hence such compliance was waived by not complaining of noncompliance by answer, since there was no opportunity, by reason of the way the complaint was framed, to do so by demurrer. *Gatzow v. Buening,* 106 Wis. 1, 81 N. W. 1003. (3) The by-law, in effect, bound the beneficiary, if at all, to submit the controversy as to what her rights were to arbitration, and was waived by the unqualified denial by respondent of all liability under the certificate. 2 May, Ins. 495; Joyce, Ins. § 3257.

The result is that at the close of the testimony appellant was clearly entitled to the direction of a verdict for the amount claimed, less the unpaid assessments, aggregating $2.40, with interest from the maturity of the claim, August 26, 1897, and to judgment accordingly.

*By the Court.*—The judgment is reversed and the cause remanded for a new trial.

Upon the ground that the facts were undisputed and indisputable, and hence that a new trial was unnecessary, the appellant moved that the direction as to remanding the cause be so changed that the cause should be remanded to the court below either with a direction to enter judgment in favor of the plaintiff for $997.60 and interest from August 26, 1897, or with a direction to proceed according to law.

The motion was denied January 13, 1903.