PETERSON et al., Respondent, v. GRAND LODGE, A. O. U. W. OF SOUTH DAKOTA, Appellant.

(156 N. W. 70.)

(File No. 3907.   Opinion filed February 1, 1916.)

1.  **Insurance—Mutual Benefit Insurance—Suspension of Member's Rights by Selling Liquors—Retaining Assessments, Waiver by.**
    Where officers of the grand lodge of a mutual benefit insurance association, and of the local lodge, had full knowledge, after the adoption of a certain by-law, that a member was engaged in the business of selling intoxicating liquors at retail until his death, and treated him as a member of the order in good standing, he paying his membership dues and assessments to the local officers, who transmitted them to the grand lodge, whose officers received and retained them, **held,** that notwithstanding there was a by-law, adopted by the lodge after a member became such and while he was engaged in said business, that a member engaged in said business should ipso facto be suspended from all rights to participate in the beneficiary fund of said order, the association thereby waived the provisions of said by-law, and is estopped from claiming a forfeiture of the membership certificate, and is liable, upon the death of the member, upon the benefit certificate.  Nor did the mutuality of the relations between the member and the order create an exceptional situation under which the ordinary rules of estoppel would not apply.

2.  **Insurance—Mutual Benefit Insurance—Suspension of Member's Rights Under By-laws—Waiver of Suspension—Ultra Vires.**
    Although the by-laws of a mutual benefit insurance association provided that any member of the order who should engage in selling intoxicating liquors at retail should stand suspended from all rights to participate in the beneficial fund of the order, and that his membership certificate should thereupon ipso facto become void, and that receipt of the assessment from such member should not continue the beneficial certificate in force or constitute a waiver of his engagement in such business, **held,** that the association was nevertheless estopped, by

acceptance and retention by the officers of the local and of the grand lodge of assessments thereafter paid by the member, to deny liability on the certificate to his beneficiaries; since, when a contract by a corporation has been so far executed that to allow the corporation to repudiate it would work injustice to the other party thereto, who has in good faith relied thereon, the doctrine of estoppel applies and prevents such repudiation, regardless of whether the corporation had a right to make it or not, unless its act in that regard was in violation of some written law of the state or some public policy.

Appeal from Circuit Court, Codington County.    Hon. CARL G. SHERWOOD, Judge.

Action by Bell Peterson, Annie Peterson-Spooner, and Gertie Peterson, against the Grand Lodge of the Ancient Order of United Workman of South Dakota, to recover upon a beneficiary certificate. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Judgment and order affirmed.

*Charles M. Stevens,* for Appellant.

*McFarland & Johnson,* for Respondents.

(1) To point one of the opinion, Appellant cited: Peterson v. Manhattan Life Ins. Co., 244 Ill. 329, 91 N. E. 466, 18 Ann. Cas. 96; Korn v. Mutual Assurance Society, 6 Cranch, 192, 3 L. Ed. 195; Hartman v. National Council of Knights and Ladies of Security (Or.) 147 Pac. 931; Mock v. Supreme Council, 121 App. Div. 474, 106 N. Y. Supp. 155; 29 Cyc. pp. 67-72, notes and cases; 2 Bacon on Ben. Soc. & L. Ins., Sec. 421; 40 Cyc. 255-6, note 71 and cases; Hexon v. Knights of Maccabees, 140 Iowa, 41, 117 N. W. 19.

Respondent cited: Supreme Tent Knight of Maccabees of the World v. Volkert, (Ind.) 57 N. E. 203; Supreme Tribe of Ben Hur v. Hall, (Ind.) 56 N. E. 780, 79 A. S. R. 262; 10 L. R. A., p. 136; Johnson v. Modern Brotherhood of America, (Minn.) 27 L. R. A. (N. S.) 446, and note; Richards on Insurance, p. 80; Modern Woodmen of America v. Coleman et al., (Neb.) 94 N. W. 814; Grand Lodge A. O. U. W. v. Lachmann et al., (Ill.) 64 N. E. 1022; Lake v. Minnesota, etc., Relief Association, (61 Minn. 96), 52 A. S. R. 538, and note, p. 549; Burlington Voluntary Relief Department of Chicago v. White, (Neb.) 43 A. S. R. 701; Vol. 3, American and English Encylopedia of Law, (2d

Ed.) p. 1089; Vol. 21, American and English Encyclopedia of Law, (2d Ed.) pp. 291 and 292; Civ. Code, Sec. 730; Johnson v. Modern Brotherhood of America, 109 Minn. 288, 123 N. W. 819, 27 L. R. A. (N. S.) p. 446; Northwestern Mutual Life Insurance Company v. Amerman, 119 Ill. 329, 59 A. R. 799.

(2) To point two of the opinion, Appellant cited:   31 Cyc. 1243, notes and cases; 29 Cyc. 188, and cases, note 59-60; 2 Bacon on Ben. Soc., etc., Sec. 426, p. 1059; Sec. 434, p. 1111; Mod. Woodmen v. Tevis, 117 Fed. 369; Coughlin v. K. of Col., 79 Conn. 58, 64 Atl. 223; Krececk v. Sup. L. of Fraternal Union, (Neb.) 145 N. W. 859; J. P. Lamb & Co. v. Merchants Nat'l. Mut. F. Ins. Co., (N. D.) 119 N. W. 1048; McCoy v. Roman Cath. Mut. Ins. Co., 152 Mass. 273, 25 N. E. 329.

WHITING, J.   One Peterson became a member of the defendant order on or about July 1, 1897, by joining the local subordinate lodge at Watertown, S. D.   There was issued to him the usual insurance certificate of said order wherein plaintiffs were named as beneficiaries.   He died in February, 1915.   Plaintiffs brought this action to recover on said certificate.   Trial was had to the court without a jury.   Findings of fact were made, and upon such findings, conclusions of law and judgment in favor of plaintiffs were entered.   From such judgment and an order denying a new trial, this appeal was taken.

Appellant has assigned the insufficiency of the evidence to support certain of the findings, but it does not urge this assignment in its brief.   There is ample evidence to support the findings complained of.

[1] The real question presented under the record herein is whether the findings of the trial court support its conclusions and judgment.   It is necessary for us to call attention to but few of the facts found.   Peterson, from time of joining appellant order down to his death, was treated by such order as a member thereof in good standing.   At all times during said period he paid his membership dues and assessments to the officers of the local lodge, and the assessments were transmitted to and received by appellant. An assessment was paid to the local officer, transmitted to and retained by appellant after Peterson's death.   At the time Peterson joined such order, he was not engaged in the business of sell-

ing intoxicating liquors. Subsequent thereto, there came into force and effect a general law of said order which provided:

"Any member of the order who shall after August, 1, 1898, have entered or who shall hereafter enter in the business or occupation of selling by retail intoxicating liquors as a beverage shall stand suspended from any and all rights to participate in the beneficiary fund of the order and his beneficiary certificate shall become null and void from and after the date of his so engaging in said occupation, and no action of the lodge of which he is a member or of the grand lodge or any officer thereof shall be necessary or a condition predecent to any such suspension. In case any assessment shall be received from a member who has thus engaged in such occupation after August 1, 1898, the receipt thereof shall not continue the beneficiary certificate of such member in force, nor shall it be a waiver of his so engaging in such occupation."

In the year 1899, and after the above law went into effect, Peterson engaged in the business of selling intoxicating liquors at retail in the city of Watertown and openly and notoriously continued in said business until his death. During all said time the officers of appellant corporation and of the local lodge had full knowledge that Peterson was engaged in such business. Many facts pertaining to the plan of organization, the purposes, the provisions of the by-laws and constitution of the Ancient Order of the United Workmen—including its Supreme, grand and local lodges—were agreed to in the pleadings. The court found, as conclusions of law, that, by reason of the above facts, defendant is estopped from asserting that the certificate issued to Peterson was forfeited, is estopped from asserting the provisions of the law above mentioned, has waived the provisions of said law, and is estopped from setting the same up as a defense herein.

We think the record clearly proves the correctness of the views expressed in Cooley's Briefs on the Laws of Insurance, 34, where it is said of appellant order:

"The controlling object of the order seems to be to provide a benefit fund out of which a certain stipulated sum is to be paid to the beneficiary of each member in good standing, on his death. * * * A certificate in the nature of an insurance policy is issued to the member. It is evident that the main object of the or-

der is protection of the beneficiaries of its deceased members by insurance, and that its fracternal character is merely incidental. The contract between the association and each of its members does not essentially differ from an ordinary contract of mutual life insurance."

Respondents do not seem to question but that the laws of appellant order were valid as against their decedent. They base their rights solely upon the correctness of the trial court's conclusions of law in relation to estoppel and waiver. Appellant concedes that there are decisions supporting such conclusions, but it contends that such decisions are not supported by sound reasoning, and are inconsistent with the fundamental idea of mutuality upon which it claims fraternal insurance, such as that of appellant order, is based.

Much has been said by both parties, and numerous authorities have been cited, upon the questions: (1) Whether the officers of the local lodge, who collect assessments and transmit same to the grand lodge, are agents of the grand lodge in collecting and transmitting such assessment. (2) Whether, if such agents, knowledge by them of facts forfeiting a paying member's membership in said order is imputed to the grand lodge. We do not deem it necessary to enter into an examination of these questions because of the finding that the officers of appellant corporation had, through the grand lodge, full knowledge that Peterson was engaged in the prohibited business and received and retained the assessments when having such knowledge. We need only determine whether the appellant corporation itself could waive the forfeiture—certainly it has waived such forfeiture if it can. But appellant urges that the mutuality of the relations of the members of appellant order creates a situation under which ordinary rules do not apply. It says that its officers and those of the local lodge are agents of each member of such local lodge as well as of the order, because, as it contends, the quality of mutuality underlies the relations of these officers to a member, as well as the other features of his relation to the society. Starting from such premise, appellant concludes that no officer—either of appellant corporation or of the local lodge—has any power, by collecting and retaining assessments, to waive the conditions of the contract of insurance or to create an estoppel against its claiming a vio-

lation of the contract and the forfeiture of the benefits under it; and it concludes that no officer of appellant corporation can do anything that would have the effect of repealing or suspending a law of such order and destroying the mutuality of the obligations and duties of its members. Appellant's contention would seem to be that there is, between the various members of its order, that same mutuality of rights and obligations and incidents flowing therefrom, as would have existed between these same persons, if, instead of joining this order, they should have entered into a contract whereby they agreed: (1) That each should contribute to a benefit fund from which benefits to the named beneficiary of each member should be paid upon the death of such member; (2) that any party to such contract should forfeit all rights thereunder and cease to be a party thereto upon his engaging in certain prohibited occupations; and (3) that, for the purpose of collecting and disbursing such benefit funds, a certain party should act as the agent of such members. It certainly would be conceded that the agent would occupy such a position in relation to the various members as that he could not waive, or estop the other members from claiming, a forfeiture on the part of a member who should engage in a prohibited occupation; but, regardless of how ironclad the conditions of such contract might be, the other members themselves—the parties with whom the contract was made—could waive such forfeiture by knowingly accepting the benefit of assessments paid after forfeiture. However, the supposed case and the one before us are not parallel. In the supposed case, a contractual relation would exist between the members, while in the case before us such contractual relation exists between each of the several members and appellant. The members are under no obligation to any one except to the appellant. They have chosen to make use of this separate entity and to make their contracts therewith and to put into its hands full control. Public policy will not sanction any attempted regulation that would relieve this corporate entity from liability where the members, under the same facts and acting with the same knowledge but without any intervening entity, would be liable.

It is well to bear in mind that the other members are not here complaining of the acts of the grand lodge in receiving decedent's assessments. It is the corporation that wrongfully took

and retained decedent's assessments that is trying to escape the results of such wrongdoing, and is trying to do so at a time when to so escape would work a wrong to the beneficiaries. The contention of appellant seems to be that its duty towards these other members forbids its payment of respondents' claim. Appellant was not so mindful of the rights of its members when it accepted decedent's assessments. We wonder what position it would have taken if Peterson were still alive and had brought an action for money had and received to recover the assessments he had paid since he went into the prohibited occupation. We wonder what appellant corporation would have done in the present case if Peterson had, after entering the prohibited occupation, paid in assessments which with interest exceeded the amount named in the certificate. We fear that appellant corporation in either of the supposed cases, would have concluded that justice towards its other members required it to hold the certificate in full effect. We are led to agree with the following found in Modern Woodmen of America v. Colman, 68 Neb. 660, 94 N. W. 814, 96 N. W. 154.

"Finally, it is earnestly insisted that, inasmuch as the plaintiff in error is a mutual benevolent association, it should not be held to the same strict rules, as respects forfeitures and the waiver of them, as are applicable between regular insurance companies and their policy holders. This consideration would appeal to us with greater force if these principles of mutuality and benevolence more frequently survived the holders of certificates, and were more uniformly regarded by the associations as being applicable to and as including the persons named as beneficiaries. A charitable organization which collects its funds with avidity, but is astute in finding excuses for not bestowing them upon the designated objects of its bounty, is not entitled to any exclusive or especial consideration at the hands of the court. The enormous volume of litigation with which associations of this kind have flooded the country, and the extremely technical character of their defenses, in many cases, to actions upon their beneficiary certificates, are a sufficient commentary upon an appeal for tender consideration by the judiciary."

[2] Appellant contends that it is ultra vires its power to

waive a forfeiture owing to the express provisions of its laws, and that for that reason those acts which would ordinarily work an estoppel cannot be held to do so in this case. In answer thereto, we would but quote with approval the following from the opinion in Wuerfler v. Trustees Grand Grove W. O. D., 116 Wis. 19, 92 N. W. 433, 96 Am. St. Rep. 940:

"When a contract made by a corporation has been so far executed that to allow the corporation to repudiate it would work injustice to the other party thereto, who has in good faith relied thereon, the doctrine of estoppel applies and prevents such repudiation regardless of whether the corporation had a right to make it or not, unless its act in that regard was in violation of some written law of the state or sound public policy; that in such circumstances, if the corporation exceeds its power, it commits a punishable offense against the sovereignty of the people, but cannot itself invoke the doctrine of ultra vires to avoid its act, at the same time inflicting a grievous wrong upon the one who has in good faith relied upon the assumption that it possessed in fact the power which it pretended to have authority to exercise. Whether that doctrine should be applied to transactions between benefit societies and their members has been a subject for consideration in many courts, and the decisions in respect thereto are by no means harmonious. But the weight of authority is clearly in favor of treating such societies substantially the same as ordinary insurance companies and other corporations, as regards their insurance contracts."

Appellant has cited numerous authorities in support of its contention that the forfeiture could not be waived. An examination of these authorities reveals that many of them do not touch upon the question of waiver, but rather of whether knowledge gained by the officers of a local lodge is imputed to the grand lodge. Several of them discuss the power of the officers of the local lodge to waive forfeiture. Hardly one of them has any bearing upon the question of whether the grand lodge can waive a forfeiture, while several either impliedly or expressly admit that it can. Thus, in a case referred to by appellant as one of the leading authorities in support of its position (Modern Woodmen of America v. Tevis, 117 Fed. 369, 54 C. C. A. 293), we find it said, the italicizing being ours:

"There is no escape from the conclusion that these limitations were binding upon all the parties to the agreement, and that the acts of the clerk of the local camp in extending the times of payment of the assessments upon its members and in reinstating delinquent members without warranties of good health were unauthorized by the society, and, *in the absence of knowledge of and acquiescence in them by some of the chief officers of the head camp,* were ineffective to establish any estoppel against the society, or any waiver by it of any of the provisions of the agreement."

The situation presented to us under the facts of this case is, in its final analysis, this: When decedent entered into the prohibited occupation, his membership in appellant order and all his rights by virtue of such membership became immediately forfeited—a fact fully known both to himself and to appellant. When decedent tendered the amount of the next assessment, he did so in the hope that his forfeiture would be waived. Unless such forfeiture was waived, appellant knew that decedent would be receiving nothing whatsoever as a consideration for the assessment tendered, and knew that its only basis for accepting the money tendered was an admiss     nt decedent's certificate would remain in full force. With full knowledge of this fact, and that in justice it could not receive such money and insist on the forfeiture, appellant accepted and retained the several assessments paid. Decedent was thus led to believe that the forfeiture was waived, and parted with his money from month to month under the full belief that the beneficiaries named by him would be protected upon his death. Appellant now seeks to avoid payment upon the ground that all rights under the certificate were forfeited by decedent. We are thus called upon to sanction a rule of law by which an insurance company, for the purpose of collecting assessments, can treat one of its certificates as in full force, and thereafter, for the purpose of escaping liability thereon, treat it as forfeited. We cannot sanction such a rule. Under the facts herein, the appellant should be and is estopped from claiming the forfeiture. Johnson v. M. B. of America, 109 Minn. 288, 123 N. W. 819, 27 L. R. A. (N. S.) 446. We quote, as applicable to the facts of this case, the following from Supreme Tent K. of M. of the World v. Volkert, 25 Ind. App. 627, 57 N. E. 203:

"Insurance contracts should be construed liberally in favor of the insured, and the facts that the insured paid his dues and assessments to the local authorities after he engaged in the liquor traffic, with the knowledge of the fact that he was so engaged, and that appellant received and retained the last payment with a knowledge of the fact, and the further fact that he died when so engaged, estops it from now asserting that the beneficial certificate was forfeited."

The judgment and order appealed from are affirmed.