CATHERINE D. SULLIVAN, Respondent, *v.* THE INDUSTRIAL BENEFIT ASSOCIATION of Syracuse, N. Y., Appellant.

*Life insurance — benefit association — certificate of membership — equitable relief on a complaint demanding judgment for money only — signature to the application for insurance — acceptance of the application — non-payment of premium.*

In an action brought by the beneficiary named therein, upon a policy or certificate of membership in a benefit association, which provided that the beneficiary should receive two shares of the mortuary fund collected for the " pool " in which the proof of death of the member should be approved by the association, the maximum value of each share being $250, the complaint alleged that the moneys collected in the pool out of which the plaintiff should be paid were sufficient to pay the maximum amount of the shares, being altogether $500, no part of which had been paid, and demanded judgment for that sum.

An answer having been interposed, the case was tried at Circuit, before the court and jury, and at the close of the evidence, in view of a provision of the by-laws of the defendant association to which the certificate in suit was subject, that in case of contest of a claim and judgment in favor of the claimant the claim should be placed in and paid *pro rata* with the claims in the pool then forming, the court stated that it would allow the action to stand as an equity action and take the advice of the jury on a question of fact as to whether the application for the certificate had been rejected, the defendant's counsel stating that there was no other question on which he desired to go to the jury.

The jury found that the application had not been rejected. The court thereupon made a decision embodying findings, upon which a judgment was entered adjudging that the defendant should include the plaintiff's claim in the pool forming at the time of notice of entry of the judgment, and should pay the

plaintiff from such pool the proportionate amount thereof that she should be entitled to under the certificate and by-laws.

*Held,* that the court had power to grant such judgment, although such relief was not demanded in the complaint, it being based upon the cause of action as alleged and proved.

It appeared that on the plaintiff's paying the first premium, the defendant's agent wrote out an application for the policy or certificate in suit, upon the life of the plaintiff's mother, to which the plaintiff signed her mother's name; this application was forwarded to the defendant, and was at first marked approved by the proper officer, but was afterwards marked rejected; the premium paid by the plaintiff was received by the defendant and not returned, and no offer to return it was made until after the mother's death, nor was a return of the policy demanded or the plaintiff informed before the death that the application was rejected. The jury found that the application was not rejected, and this finding was adopted by the court.

*Held,* that no good reason appeared for disturbing this conclusion.

The defendant moved for a nonsuit on the ground that no application was signed by the plaintiff's mother, on whose life the certificate or policy in suit was issued. The evidence showed that the mother was not present when the application was made out by the defendant's agent and the policy delivered, and that the agent asked the plaintiff to sign her mother's name to the application, and she did so. The plaintiff testified that her mother knew of the application being made, and that she spoke to her beforehand about it. The answer did not allege that the plaintiff did not have authority to act for her mother, but did affirmatively allege that the mother made the application.

*Held,* that the motion for a nonsuit was properly refused.

The plaintiff, a short time before the second bi-monthly premium, which fell due twelve days before the death of the insured, became due, called on the agent of the defendant who had given her the receipt for the first premium, and offered to pay the premium soon becoming due; he declined to receive it, saying that no receipt therefor had been sent him by the company. He had, in fact, no authority to collect premiums, except the first, unless upon receipts furnished by the company. The defendant's by-laws provided for the mailing of notices of premiums due. There was evidence tending to show, and the court found, that at the time when the second premium would have become due, the company disavowed its obligation under the certificate and failed to send its agent a premium receipt for the plaintiff, on the ground that the certificate was not an existing obligation on its part.

*Held,* that if, prior to the day the second premium was payable, the defendant repudiated its contract, mailed no notice to the plaintiff and sent no receipt to its agent for the plaintiff, although it did for others according to its custom, it should not be permitted to say that there was a forfeiture by reason of the non-payment of the premium.

APPEAL by the defendant, the Industrial Benefit Association of Syracuse, N. Y., from a judgment of the Supreme Court in favor

of the plaintiff, entered in the office of the clerk of Broome county on the 1st day of March, 1893, upon a decision of the court rendered after a trial at the Broome Circuit, with notice of an intention to bring up for review on such appeal the order denying defendant's motion for a new trial.

*Walter S. MacGregor,* for the appellant.

*Carver, Deyo & Jenkins,* for the respondent.

MERWIN, J. :

This action is based upon a policy or certificate of membership, issued by the defendant and bearing date August 28, 1891, by which the defendant, " for and in consideration of the representations and warranties made to it in the application for this Certificate and the sum of four dollars and seventy cents to it in hand paid, and the agreement to pay a like sum every two months during the balance of the first year, and then four dollars and seventy cents every two months thereafter," constituted Mary O'Brien a member of class B of the association, with the provision that the beneficiary therein named should receive two shares of the mortuary fund collected for the pool so called, in which the proof of death of the member is approved by the association, the maximum value of each share being $250. The certificate also provided that all premiums paid on account of certificates terminated by death and approved in any pool in this class should be returned to the claimants thereof out of and before the distribution of the mortuary fund.   The plaintiff, Catharine D. Sullivan, the daughter of the member, was named as the bene- ficiary, and the certificate was stated to be issued on the conditions and stipulations stated in the application, and upon the conditions and agreements contained in the by-laws of the association.

Mrs. O'Brien died on the 12th of November, 1891.   In the by-laws there is a provision that " in case the payment of any claim is con- tested by the association and a judgment is rendered in favor of the claimant, the said claim shall be placed in and paid *pro rata* with the claims of the pool then forming."   By the judgment in this case it is " ordered and adjudged that the defendant shall include the plaintiff's claim in the pool forming at the time of the service upon the attorney

for the defendant of a copy of this judgment and notice of its entry, and from such pool the defendant is directed to pay to the plaintiff the proportionate amount thereof that she should be entitled to under the certificate which she holds and the by-laws of the company."

No misstatement or fraud is charged, and there is no dispute as to the amount or form of recovery in case the plaintiff is here entitled to recover at all. The defendant claims (1) that the court erred in refusing to grant a nonsuit on the ground that under the by-laws of the defendant the plaintiff was not entitled to maintain an action at law to recover money damages on the certificate; (2) that the court erred in holding that the policy ever had a valid inception; (3) that the court erred in refusing to grant a nonsuit on the ground that no application was made by Mary O'Brien for the issuance of the certificate; (4) that the court erred in holding that the policy was not lapsed for failure to pay the premium due November 1, 1891.

1. The complaint sets out the making of the certificate or policy, stating its effect, and a copy is attached. It is alleged that all the conditions of the contract to be performed by the plaintiff or by Mrs. O'Brien have been performed, or their performance waived by defendant. The death is alleged and notification thereof in due time to the defendant, and that defendant waived proofs of death. It was then alleged that at the time of Mrs. O'Brien's death and since that time the moneys collected in the mortuary fund for the pool, out of which the plaintiff should be paid the benefit under the certificate, were sufficient to pay the plaintiff the maximum amount of the shares, being altogether $500, no part of which had been paid. Judgment for that sum was demanded. In the certificate it is stated that it is issued and accepted upon the conditions and agreements contained in the by-laws of the association.

The case was tried at the Circuit, before the court and a jury. At the close of the evidence, in view of the provision of the by-laws that, in case of contest of a claim and judgment in favor of the claimant, the claim should be placed in and paid *pro rata* with the claims of the pool then forming, the court stated and held that it would allow the action to stand as an equity action, and take the advice of the jury on the question of fact as to whether the application was rejected by the medical director of the defendant on the 28th of August, 1891. The court asked the counsel for the defend-

ant if there was any other question of fact that he desired to have submitted to the jury, and the reply in substance was that there was not. The question of fact, as above suggested, was then submitted to the jury, and the verdict was that the application was not rejected by the medical director on the 28th of August, 1891. The court then made its decision, embodying findings of fact and law, and, in accordance with such decision, the judgment appealed from was entered.

The relief granted was not demanded in the complaint, and the defendant claims that in this action the court had no right to grant it. An answer having been interposed, the court may permit the plaintiff to take any judgment consistent with the case made by the complaint, and embraced within the issue. (Code, § 1207.) The fact that the wrong relief was asked is not important. (*Murtha* v. *Curley*, 90 N. Y. 377.) The judgment was based upon the cause of action as alleged and proved. The form and amount of the recovery is regulated by the by-laws which are referred to in the certificate which is a part of the complaint. The judgment was certainly embraced within the issue, and was also consistent with the case made by the complaint. It was fixed by the certificate and the by-laws. It is not claimed that the judgment is wrong if the court had power to grant it. (*Smith* v. *People's Mut. Ben. Society*, 64 Hun, 534.) We think that the court had the power. It is to be observed that the defendant had opportunity to go to the jury on all questions that it desired to. It, in effect, consented that the court pass on all the questions of fact aside from the one submitted, and render the proper judgment. It is not material whether it be called a trial at equity or law.

2. The theory of the defendant on the second proposition is that the application was not approved by the company and the policy was by mistake delivered to the plaintiff. There is evidence showing that Mr. Sperry, the agent of defendant, saw the plaintiff on the subject of transferring to the defendant a policy she was carrying on the life of her mother in the Flower City Insurance Company, and which she was willing to transfer to the defendant; that soon after this, Mr. Mahar, who seems to have been acting for defendant at the request of Mr. Sperry, called on the plaintiff and delivered to her the policy in question, she paying him therefor the premium of four dollars and seventy cents, and receiving therefor the receipt of

Mr. Sperry for the defendant; that on the same occasion Mr. Mahar wrote out the application, and it was signed by plaintiff and she also signed the name of her mother. This was forwarded to the defendant and there is evidence tending to show that at first it was marked approved by the proper officer of the defendant, but afterwards the approval was erased and it was marked rejected. The premium paid by plaintiff was received by the defendant, and there was no return of it, or offer to return it until after the death of Mrs. O'Brien; nor was the return of the policy demanded or the plaintiff informed before the death that the application was rejected. The court submitted to the jury the question whether the application was rejected by the medical officer of the defendant upon its receipt by it on the 28th of August, 1891, and they found that it was not. This finding the court in its subsequent disposition of the case adopted, in effect determining that the policy was delivered by the defendant as and for a good and valid policy. We find no good reason for disturbing this conclusion.

3. But it is said that the application was not in fact signed by Mrs. O'Brien. She was not present at the time the application was made out by the agent of the defendant and the policy delivered.

The agent asked the plaintiff to sign her mother's name and she did so. The plaintiff testifies that her mother knew of the application being made; that she spoke to her beforehand about it. There is in the answer no allegation that the plaintiff did not have authority to act for her mother. On the contrary, it is affirmatively alleged that Mrs. O'Brien made the application. So far as this question is concerned, we think the nonsuit was properly denied.

4. Was the policy forfeited by reason of the failure to pay the premium due November 1, 1891? The plaintiff, a short time before this date, called on Mr. Sperry, who had given her the receipt for the first premium, and offered to pay the premium soon becoming due. He declined to receive it, saying that he had no receipt from the company for her among the receipts that had been sent him, and, therefore, could not accept her premium. The plaintiff replied she didn't understand it, and the result was he promised to call the attention of the company to the fact of her call and see what there was of it. Apparently the plaintiff heard nothing further about it, and the death occurred on the twelfth of November.

Mr. Sperry was employed by the defendant to assist in obtaining transfers from the Flower City Company to the defendant, and in that matter, to the knowledge and assent of defendant, he gave receipts for the defendant in his individual name for the premiums paid at the time of the transfer. The plaintiff had such a receipt for her first premium. The defendant knew that Sperry had been accustomed to receive the premiums in the Flower City, and they also employed him to act as their collector. He, nowever, for any premiums after the first had in fact no authority to collect except upon receipts furnished by the company.

The by-laws of the defendant provided that premiums should be payable at the home office of the association, " but if, for the sake of convenience or otherwise, any premiums are paid to collectors or agents of the association, such collector or agent shall be deemed and held to be the agent of the members so paying, unless the agent or collector shall furnish the members so paying a receipt for said premium signed by the secretary of the association, or enter the same in the member's individual receipt book; otherwise, no payment to any such agent or collector shall be binding upon the association until received and accepted by it." One clause of the application stated where and to whom " notices of premiums due " should be sent. In one of the by-laws which related to the class of policies in which was the plaintiff's, there is a provision that " a notice of premium due shall be mailed to the last-known post-office address of each member of this class, during the first ten days of February, April, June, August, October and December of each year, and will fall due and must be paid on or before the first business day of the month following date of notice, and any certificate upon which premium is not paid on or before the date it falls due, will be subject to the penalties provided in article five of these by-laws." The article as to the penalties is not printed in the case, but the inference from the application is that failure to pay when due was made a cause of forfeiture of the certificate and the previous payments. It may be inferred from the evidence that the notice above referred to was never mailed to the plaintiff, though she was named in the application as the person to whom notices should be sent, and her address was given.

There was evidence tending to show, and the court found, that

at the time when the second premium would have become due under the certificate the company disowned its obligation under it, and failed to send to their agent, Mr. Sperry, a receipt, on the ground that the certificate was not an existing obligation upon their part.

If, prior to the first of November, the defendant repudiated its contract, mailed no notice to the plaintiff, and sent no receipt to its agent for the plaintiff, although it did for others according to its custom, it should not be permitted to say that there was a forfeiture by reason of the non-payment. The plaintiff saw the agent of the defendant, with whom she had personally dealt with the approval of the defendant, and paid the first premium. She had a right to believe that he would know what the defendant wanted, and in the absence of the notice called for by the by-laws she was not required to send the premium to the home office on pain of forfeiture. Ordinarily a tender is not necessary when the acts and conduct of the other party indicate that it will be futile. (*Baumann* v. *Pinckney*, 118 N. Y. 604; *Manhattan Life Ins. Co.* v. *Smith*, 44 Ohio St. 157.) A company cannot take advantage of a forfeiture that it encourages by a failure to give its accustomed notice before the premium is due. (*Helme* v. *Phil. Life Ins. Co.*, 61 Penn. St. 107.) No tender was necessary after the death, as by the terms of the certificate the premiums paid were to be returned to the insured.

These considerations lead to the conclusion that the court below correctly held that the defense of forfeiture was not made out. It follows that the judgment should be affirmed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order affirmed, with costs.