## William E. Clow et al., Appellants, v. Western Life Indemnity Company, Appellee.

### Gen. No. 17,821.

1. INSURANCE, § 808*—*when member unlawfully suspended deemed to have abandoned the policy.* A member wrongfully suspended, who, after a compromise agreement for a settlement of the dispute has been reached, abandons the negotiations with the company, *held* to have abandoned his policy and acquiesced in its cancellation.

2. INSURANCE, § 808*—*when member unlawfully suspended does not lose rights for failure to pay dues.* A member unlawfully suspended is excused from making a tender of subsequent dues so long as the insurer refuses to reinstate him and insists that his rights have been forfeited.

3. INSURANCE, § 887*—*when correspondence after death of member, inadmissible.* Correspondence between solicitors for beneficiaries and the company after the death of the member, *held* not admissible to rebut defense that member was suspended.

Appeal from the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed October 13, 1913.

PAUL BROWN, for appellant.

THOMAS J. GRAYDON and ASHCRAFT & ASHCRAFT, for appellee; EDWIN M. ASHCRAFT, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* and for costs against the plaintiffs. The judgment was rendered on a verdict in favor of the defendant directed by the court. The plaintiffs were the children (together with the executrix of a deceased child) of

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

James B. Clow. They were the beneficiaries, if the policy was in force, in a policy of the defendant, the Western Life Indemnity Company, a mutual insurance company organized under the Act of June 18, 1883, and reincorporated under the Act of June 22, 1893.

The pleadings and the documentary and other evidence offered are somewhat voluminous, but the facts and the questions involved in the case are simple, rendered especially so by the concession made by the appellee as to a proposition which it would otherwise be of primary importance to consider.

The policy in question was issued to James B. Clow on May 27, 1884. The Company was then named Knights Templars & Masons Life Indemnity Company. It afterwards changed its name to Western Life Indemnity Company. Under both the Act of 1883 and that of 1893 and by the provisions of the policy the funds for the payments to the beneficiaries of deceased members were to be secured from assessments made upon the surviving members. Among the stipulations of the policy as issued was one providing for the notice to be sent to the surviving members of an assessment, and providing further as follows: "Should any one fail to forward as indicated in the notice the amount thus due, for a period of ten days after the date of said notice, he shall forfeit his membership and all benefits arising therefrom. Any one having thus forfeited his membership may be reinstated, he being alive, within thirty days after the date of said notice, by payment of all arrearages, and may be reinstated to membership subsequent to the thirty days upon such terms as the Board of Directors may fix."

Another provision of the policy was: "There shall be an annual due of one dollar per one thousand dollars on the face of the policy payable on or within ten days after each anniversary of the policy, and a fail-

ure to pay said due shall work a forfeiture of the policy the same as an unpaid assessment.''

April 1, 1899, the Company mailed to James B. Clow, to his proper last recorded post office address, as provided by the conditions of the policy, a notice of assessment. Clow failed to pay it within the ten days and he was noted upon the books of the Company as suspended for nonpayment of the assessment. He failed to apply for reinstatement within thirty days, but after the expiration of thirty days he did apply to the directors of the Association, and tendered the amount of the assessment and demanded to be reinstated, asserting that he had not received notice of the assessment. The directors refused to reinstate him, on the ground that a change in the by-laws made in 1896 (by which Clow was bound), took away from them the power to do so after the thirty day period had elapsed, and that the prescribed notice having been given in the prescribed manner, it was immaterial, if true, that he had not received the same.

The by-laws of the Association provided for the issuance to the members of bonds drawing three per cent. interest if any surplus should arise out of the contributions made by the members for the general expenses of the Association, and a bond was issued to James B. Clow for $68.63 on May 24, 1894, which he held when he was noted as suspended in March, 1899. This bond contained this provision: ''This bond with accrued interest may be used at par by the said member at any time during his life in payment of assessments or dues on said policy, * * * but in order to use this bond in payment of assessments or dues on said policy the bond must first be surrendered to and in the possession of said company for cancellation before the same or any part thereof can be so applied in payment of said assessments or dues.''

This bond was not mentioned by either party when Clow sought to be reinstated, but in the case of *Vail v. Knights Templars Indemnity Company*, brought in

the Superior Court of Cook county at some time after these transactions, this identical form of bond, in connection with the constitution and by-laws of the Association and a policy similar to the one here in question, was under discussion and the Superior Court, affirmed afterward by the Appellate Court and the Supreme Court, held that the Company was bound, before it could legally suspend for nonpayment of assessments a member who held one of these bonds, to apply the amount of the bond on the assessments, whether requested to do so or not and without the surrender of the bond, and that until the amount of the bond was thus exhausted an attempted suspension was invalid.

The opinion of the Supreme Court affirming this proposition is to be found in 206 Ill. 404, and was filed December 16, 1903. The decision of the Appellate Court was December 30, 1902 (105 Ill. App. 331).

While the appeal to the Appellate Court was pending in April, 1902, William H. Gray, the manager of the Company, and Clow, who were friends, found themselves fishing together at Palm Beach, Florida. At that time Mr. Clow was still maintaining that because he had not received the mailed notice of the assessment on March 1, 1899, the Company should have accepted the assessment and reinstated him in April, 1899, and the Company was insisting that the suspension was valid. No question of the application of the bond had been mooted between them. One day at Palm Beach, however, Mr. Clow brought up with Mr. Gray the differences between himself and the Company, said he would like to get the matter straightened up and asked why it could not be arranged.

Gray expressed himself desirous of settling the matter. He testifies in this case that Clow and he came to an agreement. Clow on his part promised to pay up the amount he would have been obliged to pay had he stayed in the Company, and Gray, for the Company, after explaining that a change in the law of Illinois in

1893 had altered the form and character of the policies issued by the Company, promised to issue to Clow, on the payment of said amount by Clow and the surrender of the old policy and bond, a new policy for a specific or guaranteed sum of five thousand dollars. The difference between the two forms of the policy mentioned, that prior to 1893 and that subsequent, was that the former guarantied no specific sum to be paid, but made the sum dependent on the amount collected on the assessment of members, limiting it, however, to a maximum amount.

This was the effect of the policy held by Clow which is here sued on. The face of the policy promises to pay "Five Thousand Dollars and all the money paid on the policy in assessment, subject to the limitation as to the amount of such payment as is provided in Section One (1) of Article Seven (7) of the Constitution on the back of this policy of membership."

The section in question reads: "Upon due notice the Board of Directors shall pay the amount set forth in the deceased member's policy of membership. Provided that a policy of membership for Five Thousand Dollars shall be good for all the money in the death fund arising from one assessment provided it shall not exceed Five Thousand Dollars and all the money paid on the policy in assessments:    *    *    *."

By the Act of 1893, under which the defendant Company had reincorporated, it was provided that every policy thereafter issued by any company doing business under the Act should specify the sum of money which it promised to pay on death and be obligated to pay said amount.

As an argument is based thereupon by the appellant, it should be noted that the Act of 1893 provides that, except in case of a transfer of risks or policy holders from some other corporation: "No corporation doing business of life insurance under this Act shall issue a certificate or policy upon the life of any person more than sixty-five years of age."

Shortly after the return from Florida of both Mr. Clow and Mr. Gray another conversation occurred between them in which the agreement was confirmed by both parties and Mr. Gray told Mr. Clow that the matter should be closed up "as soon as possible   *   *   * so that there would be no possible chance of any legal complications thereafter."

There was also the following correspondence between them, given in full so far as it can be in any sense material:

"CHICAGO, April 11, 1902.

W. H. GRAY,
    General Manager   *   *   *

You will probably recall the conversation   *   *   * at Palm Beach   *   *   *   if you are in the same mind as you were then you may send me an account of the past dues on my policies, on receipt of which I will take down the old policy and exchange it for the new as I proposed.   *   *   *        JAMES B. CLOW."

"April 11, 1902.

MR. J. B. CLOW,
    *   *   *   In accordance with my conversation and understanding with you while in Florida, I desire to state that the amount of premiums accrued and due since the forfeiture of your policy is $729, for which sum please send your check together with the old policy and bond and we will issue to you a new guaranteed policy for $5000 in accordance with our agreement while at Palm Beach.  Please give this matter your early attention.  I will be obliged if you will bring those papers to the office yourself, in order that the whole matter may be closed up without delay.   *   *   *
        W. H. GRAY, General Manager."

"April 17, 1902.

MR. W. H. GRAY, Gen'l Mgr.
        *   *   *

I see that the back premiums on my former policies amount to $729.  This is much higher than I expected and I beg to ask you to furnish me the notices from the time you notified me that my policy was cancelled

Clow v. Western Life Indemnity Co., 182 Ill. App. 251.

until the present time, on receipt of which I shall call and see you and endeavor to have the business straightened up to the satisfaction of both parties. * * *

JAMES B. CLOW.''

''April 18, 1902.

MR. J. B. CLOW,
* * *

Yours of the 17 received and noted. Enclosed I send you corrected bill made directly from the books of this Company, together with a blank postal card of each assessment that has not been paid by you. You will find that these figures are a little different from the ones I made before in the fact that there was one assessment omitted that should have been added; the annual due was also omitted. The total of the amount of dues in this company unpaid by you is $741.75. I wrote you my last letter in exact accord with what I understand our agreement was in Florida and is correct except as to the figures. You agreed to immediately return the old policy to the Company, together with the papers that go with it, accepting in lieu thereof a new guaranteed policy for $5000. In this matter of compromise I would have no right and would not waive the time of payment to be made to the Company. The understanding was that this policy should be paid promptly upon the ascertaining of the amount due, and for that reason I send you these figures and trust that you will give the matter your prompt attention.

The cards enclosed include the assessment cards from March 1, 1899, to April 1, 1902. If this proposition is not accepted in accordance with the time and spirit of the agreement made in Florida and the letters written from here, then all the Company's rights are hereby preserved. * * *

W. H. GRAY, General Manager.''

Enclosed with this letter were an original notice of each assessment that had been made by the Company from March 1, 1899, to April 1, 1902, inclusive, and also the annual dues notices.

No communication either oral or written was ever received from Mr. Clow in answer to this letter and inclosures, nor to one of May 3, 1902, which Mr. Gray wrote to him. This last was as follows:

"May 3, 1902.

MR. JAMES B. CLOW,

\* \* \*

You have not called to see us as you agreed to do in your letter of April 17, 1902, although we immediately complied with your request in sending you the notices, for which papers we have receipts. It is important that this matter should have your immediate attention.

\* \* \*

W. H. GRAY, General Mgr."

It was stipulated in the case that except as these notices of monthly assessments from March, 1899, to April, 1902, were sent to Mr. Clow in the letter of April 18, 1902, none were sent him at any time after the one of March 1, 1899, although assessments were from that time up to January, 1908, the date of Mr. Clow's death, made monthly upon the regular members of the Association.

After Mr. Clow's death there was correspondence between solicitors for the plaintiffs in this case and the Company, in which the former took the position that the policy of May 27, 1884, was in full force and effect, and the Company liable thereunder, and the latter that it was void and that there was no liability thereunder. In one of the letters of the Company (by George M. Moulton, President), taking this position, it is said: "\* \* \* You are advised that Mr. Clow terminated his membership in this Company by his failure to pay assessment No. 178 due to be paid on said policy in March, 1899. \* \* \* This statement of fact, however, shall not be construed as a waiver of any right of defense to which the Company may be legally entitled against any claim made under said policy. \* \* \* "

All this correspondence after the death of Mr. Clow was offered in evidence by the plaintiff in rebuttal and objected to. The objection was sustained and the cor-

respondence excluded. This is one of the rulings complained of in this appeal. We consider it correct, however.

The concession made by the appellee that we have spoken of is that up to April 18, 1902, at least, Clow was a member of the defendant Association and that his policy was in force, subject, of course, to his obligation to pay the prior annual dues and the prior assessment which had been made, but of which he had up to that time received no notice. This concession was rendered necessary by the ruling of the Supreme Court in the *"Vail"* case, before mentioned. The Company had not applied to the dues and assessments the amount of the bonds that Clow held, but had noted him as delinquent and his policy as forfeited, when they were not so. After that it had refused payment of the prior assessments and had given him no notice of those thereafter made. In consequence, up to the time he did receive notice of them, they had not become due from him. The refusal of the Company to reinstate him and its insistence that his rights had been forfeited also excused him, while it lasted, from the tender of his annual dues, although they were payable by the constitution without notice.

But the appellee says that after the agreement was reached at Palm Beach and especially after Clow on April 18, 1902, had received, with an offer to carry out said agreement, specific notice of the amount of the prior unpaid assessments and dues, and took no measures and made no movement for the six years intervening before his death to pay those assessments or dues or even to negotiate in any manner further concerning the same, he must be presumed to have abandoned his policy and acquiesced in the cancellation of it which the Company had attempted to make.

We think this position is well taken and sustained both by reason and by the authority of many cases cited by appellee. *Railway Passenger & Freight Conductors' Ass'n v. Leonard,* 82 Ill. App. 214; *Pfingston*

*v. Grand Lodge United Workmen,* 41 Ind. App. 9; *Lone v. Mutual Life Ins. Co. of New York,* 33 Wash. 577; *Mutual Life Ins. Co. v. Phinney,* 178 U. S. 327; *Mutual Life Ins. Co. v. Hill,* 193 U. S. 551; *Lavin v. Grand Lodge United Workmen,* 112 Mo. App. 1.

Counsel for the appellants has ingeniously sought to distinguish these cases from the one at bar, but we think the principle is the same and that as the Court said in *Pfingston v. Grand Lodge United Workmen, supra:* "There is no equity in the claim."

It is objected that the policy of 1884 could not be abrogated by a verbal agreement. It could, in our opinion, however, be abandoned and forfeited by an absolute neglect for six years to take any means or make any tender or attempt any negotiation or proceedings to keep it alive after a compromise agreement for a settlement of a dispute about it had been reached. The unexplained and absolute abandonment of the negotiations, which had reached the point of consummation, was equivalent to an abandonment of the policy and consistent only with the hypothesis that Mr. Clow had concluded that considering the arrears that he would have to pay, "the play was not worth the candle." Nor is the argument forceful to us that the agreement reached involved "a new policy" under the Law of 1893, and as Mr. Clow was in 1902 over the age which was fixed in the law as a maximum for a new beneficiary, the agreement could only be considered a trick to "confidence" Mr. Clow out of his rights under the old policy.

Even if Mr. Clow had concluded in April, 1902, that "a new" policy would be *ultra vires* and invalid, this would hardly excuse him from making a tender of the assessments and dues under the old policy when he had been given specific notice of their amount, or justify him in breaking off without explanation all communication about the agreement reached. Thus acting under such circumstances would still indicate abandonment of the old policy.

Clow v. Western Life Indemnity Co., 182 Ill. App. 251.

But we do not think there is any merit in the contention that the "new" policy, issued, as could be abundantly proved, to an old member in compromise settlement of a dispute as to his former policy, and issued in the "new" form because of and in accordance with his expressed preference for that form, naming, as it did, a guarantied amount, could be held invalid, *ultra vires,* or for any reason unenforceable against the Company.

The contention that the offer in the correspondence in April, 1902, which Mr. Clow finally ignored, departed substantially from the agreement reached in Florida, seems, even if material, hardly borne out by the facts. It is true that Mr. Gray testified that at Palm Beach it was understood that in the payment of the sum in arrears Clow was to have credit for the amount of the bond for $68.63, with interest, and that in the letter of April 11th, Mr. Gray, apparently forgetful of that or careless in expression, wrote, after stating the arrears to be $729, "for which sum please send your *check together with* the old policy and bond." But in answering that letter Mr. Clow makes no reference to this discrepancy, merely expressing surprise that the amount of the arrears was so great, and in the final and decisive letter of April 18th, which Clow failed to answer or take notice of, it is not stated or implied that the amount of the bond with interest would not be allowed in the settlement of the arrears. It is only said, "The total of the amount of dues in the Company unpaid by you is $741.75." The bond could have been turned in as a part of this amount.

We think there was no question to be left to a jury. The plaintiff made a *prima facie* case, but the defendant, on its plea, by uncontradicted evidence, presented facts which as a matter of law defeated the action. The motion at the close of all the evidence for a peremptory instruction was therefore properly allowed.

The judgment of the Municipal Court of Chicago is affirmed.                              *Affirmed.*